UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:                                    )
                                          )
WILLIAM CHARLES BEVAN                     )
                                          ) Case No. 22-12609
Debtor                                    ) (Chapter 13)
                                          )

### MOTION TO ENFORCE CONFIRMED PLAN AND CONFIRMATION ORDER
### (AND REQUEST FOR HEARING)

WILLIAM CHARLES BEVAN (the "Debtor") files this Motion To Enforce Confirmed Plan and Confirmation Order (the "Motion"), on behalf of the estate and by and through counsel John D. Burns, Esquire, and The Burns Law Firm, LLC, states as follows:

### FACTUAL STATEMENT:

1. On or about May 13, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 13 in the United States Bankruptcy Court for the District of Maryland.

2. The Debtor is the owner of the Rockville Property situated at 11229 Empire Lane, Rockville, MD 20852 herein. The Debtor is a $1/4^{th}$ owner of the Laurel Property situated at 3415 Wenona South, Laurel, MD 20724 herein. The confirmed Amended Plan [Dkt. 55] and the Confirmation Order entered on October 26, 2022 [Dkt. 80] mandate and provide authority for the restoration, rehabilitation and sale of the Rockville Property. The Plan and Confirmation Order in kind mandate and provide authority for the sale of the Laurel Property on the market (other than by reverse mortgage or purchase by Debtor) following 90 days after the foregoing Confirmation Date.

3. At the unusually litigated confirmation hearing on September 27, 2022 with

1

the Trustee, testimony of Debtor was taken and the Debtor consented to all terms of the Plan and was supportive of confirmation of the Plan. Debtor supported the restoration and repairs that have now occurred and will be completed by April 7, 2023 on the Rockville Property. The Debtor supported the Plan efforts to move him into the Laurel Property at and prior to the Confirmation Order, if he could sustain independent living and the reverse mortgage situation would work out to that result. The alternative under the Plan was a sale on the market to pay off the 3 siblings with whom Debtor owns the Laurel Property on title after the 90 days from the Confirmation Order.

4. At no instance under the Plan and Confirmation Order was or is the Debtor able to retain the Rockville Property. The Debtor had months of financing efforts prior to the Confirmation Date for that to occur, and the period for Debtor retention concluded on the Confirmation Date. The Debtor likewise does not have any exclusive rights to retain the Laurel Property after 90 days following the Confirmation Date by purchase from the 3 siblings. Significant efforts were made to retain the Laurel Property following the Confirmation Date, all of which reverse mortgage applications failed. The Plan funds 100% of all claims and administrative expenses, and there is an anticipated substantial surplus for the Debtor given the work that has been performed over these months since the Confirmation Order to enhance value. The Plan contains many protective provisions to guard against later recalcitrant conduct that was anticipated from the Debtor. These include restrictions on modification, bars on pre-sale conversion or dismissal, and other material terms.

5. Prior to and on the Confirmation Date, the Rockville Property was rotted and decayed, with prowling reptiles and large rodents reminiscent of Jurassic Park. It had a leaking to non-existent roof and contained mold that was so toxic that the undersigned counsel was ill for a day

or more after a single modest visit in 2022. The Laurel Property was and remains in a rotted and decayed condition likewise without any habitability and contains even more mold than did the Rockville Property. The Rockville Property was worth by appraisal a sum in the range of $550,000.00 in its then current value and an appraised value if improved in the amount of $920,000.00-$950,000.00, according to Mr. Levin's records. The Laurel Property similarly was worth by appraisal a sum in the range of $250,000.00 in its now current value and an appraised value if improved in the amount of $420,000.00 - $450,000.00.

6. Following the Confirmation Date, the Debtor and estate have engaged EHI Mold Remediation, Inc. (the "Contractor") to restore and repair and renovate the Rockville Property in accordance with the foregoing Plan and Confirmation Order, and the confirmation hearing. Three Application/Motions have been filed and served on Debtor among others containing the contracts, cost, expense and time-line for the (i) mold remediation; (ii) roof replacement; and (iii) reconstruction work from the Contractor. Each of these contains the cost of the work on Rockville Property and very few change orders have arrived. These are all of record and were approved after being filed, served (including mail to Debtor and email to Debtor), and upon which Orders were entered after notice that were likewise mailed to the Debtor.

7. As the Debtor well knows and the Court record demonstrates, the funding for the Contractor derived from retirement withdrawals, upon which the Debtor waived exemption as a condition of confirmation. Insurance claims were sought and denied as the deterioration was a result of the Debtor's abnegation of his home maintenance responsibilities. All work by the Contractor has been performed within budget except for several very modest change orders. All work by the Contractor on the Rockville Property is being performed timely and shall wrap up and conclude on

April 7, 2023 (save some window installations which are delayed only because of supply chain interruptions caused by economic conditions). Mr. Levin advises the Rockville Property will be on the market before the second week of April, 2023 (Passover only interfering) and he anticipates a contract of sale within fair marketing pricing of above $900,000.00 well before May 1, 2023, although closing as an administrative detail may require a short time further as noted in several prior pleadings.

    8. In February, 2023, the disposition of the Laurel Property came into focus, given the Debtor's failure to obtain a reverse mortgage that would fund his buyout of the 3 siblings on the Laurel Property within 90 days of the Confirmation Order[1]. Following discussions between Mr. Levin as the agent in fact for Debtor with Matt Bevan, on behalf of the three siblings, and Debtor as to his interests in February, 2023, the foregoing parties decided that instead of selling the Laurel Property for a low sum of $250,000.00 or below, a repair budget of about $80,000.00 would be spent by Debtor from his retirement funds to rehabilitate the Laurel Property, following a 9019(a) motion and court approval.

    9. All four siblings working with Matt Bevan would receive $299,000.00 as a guaranteed post-construction sum from the Laurel Property sale. As that would result in a $420,000.00 - $450,000.00 sale value on the Laurel Property either if the Debtor qualifies to purchase it or if it sells on the open market, there would be a significant surplus that would belong to the Debtor, assuming the estate was paid off previously. The Debtor would then have a choice to qualify to purchase the Laurel Property, or to have it sold and he would receive the net surplus, again assuming the estate and its obligations were already satisfied. The undersigned is informed by a

---

[1] Significant effort was expended to obtain the Debtor a reverse mortgage.

lender's representative, because Debtor would have the cash to close and because the Laurel Property would pass an appraisal and inspection post-construction, a reverse mortgage was feasible if the Debtor wanted it.

10. If the Debtor is unwilling or unable to acquire the reverse mortgage, then the Laurel Property would be sold on the open market and Debtor would recoup the surplus cash which reportedly from Mr. Levin would be substantial and outweigh the investment in the Laurel Property by a significant sum. The Debtor agreed to the Laurel Property construction project on February 15, 2023 and a copy of the agreed item is attached hereto as **Exhibit A**.

11. Putting aside the aforementioned Confirmation Order and Plan and the confirmation hearing at which Debtor consented to the rehabilitation work on Rockville Property being pursued and implemented by Ross Levin, the agent in fact, the Debtor was consulted at every stage of the process by Mr. Levin, and Debtor signed an affirmation of his support for the Rockville Property construction work on February 15, 2023, a copy of which is attached hereto as **Exhibit B**.

12. Indeed, at each visit with Debtor the agent in fact Mr. Levin obtained phone video of the Debtor's continued commitment to each specific aspect of the Plan and Confirmation Order process that was germane so that there would be no misunderstandings later.

13. As the Bankruptcy Court will recall, the recalcitrance of the Debtor and his many prior bankruptcy cases weighed heavily against the confirmation process. Numerous documented allegations of gamesmanship with the legal system were introduced by opposing counsel on September 27, 2022, which were very difficult for undersigned counsel to overcome. As the Bankruptcy Court noted at the hearing to Debtor, the undersigned was "trying to pull a rabbit out of a hat" for the Debtor, his client. The undersigned succeeded. The Plan is nearly fully

administered.

14. All that is left to complete is the construction in the week to come on the Rockville Property, and to sell it after a brief marketing period, all as required by the Plan and Confirmation Order. Proceeds will be paid the Trustee, and the Trustee will do his job to pay allowed administrative expenses and 100% of all allowed claims. Then, if the Bankruptcy Court wishes to entertain the continued notion of development of the Laurel Property and its sale with an enhanced value to the benefit of the Debtor (in or about August, 2023), the Debtor and his 3 siblings can achieve that goal through Mr. Levin, the agent in fact for the Debtor and estate herein as noted.

15. However, if one or another of the parties (eg; 3 siblings or Debtor) have abandoned their desire to implement the foregoing construct, then immediately following the sale of the Rockville Property, the Laurel Property can be quick sold, proceeds disbursed to the Trustee for distribution and the Chapter 13 case will have been once again a 100% Plan success, and fully administered after payment by the Trustee of allowed administrative expenses and 100% of all allowed claims, including appropriate disbursements to the three siblings from the Laurel Property and a surplus of what may be left to the Debtor.

16. All would be well in this Plan and ensuing construct, but for the events of March, 2023. Therein, the undersigned was apprised that due to concerns allegedly expressed by Manor Care (eg; firearms being threatened to arrive by the Debtor, non-payment of care contributions required from the Debtor; denigrating abusive treatment to staff), a petition had been instituted to discharge the Debtor from his Wheaton Maryland facility where he has been resident for the majority of time in this Chapter 13 case. On information and belief, an ALJ issued an Order discharging the Debtor, finding him to lack credibility in his presentation opposing discharge. The Debtor then

retained legal aid counsel, Christina Moore, Esquire who is copied herewith and she filed on Debtor's behalf a petition in the Circuit Court to ensure that no unsafe discharge would occur.

17. All of that is fine, but for the fact that Debtor has revisited by and through Ms. Moore apparently the prospect of returning to the Rockville Property, rather than allowing it to be sold in accordance with his unmodifiable Plan and Confirmation Order. Creditors have waited for years through many apparently errant bankruptcy cases and all the team working for Debtor including undersigned counsel and Mr. Levin have dedicated much time and effort to make this Chapter 13 case a successful event. Successful in that it will pay 100% of all allowed administrative expenses and claims, prior to returning to Debtor what should be a meaningful surplus dividend. The Debtor's seeming change of heart whereby he has demanded that he be permitted to return to – and move back into – the Rockville Property is in bad faith and inconsistent with the law of the case and barred by consent and *judicial estoppel* herein.

18. This would not require a Motion requesting enforcement of the Plan and Confirmation but for the Debtor's overt actions taken over the past month to now interfere and impose his intentions on the actual construction at the Rockville Property. As detailed in the Affidavit of Mr. Levin, on March 22, 2023, the Debtor took it upon himself after engaging Ms. Moore to knowingly, intentionally and contrary to law frustrate the purpose and effect of his own Plan and Confirmation Order. To wit, Ms. Moore contacted Mr. Levin on March 21, 2023 and denoted that Debtor was moving back into the Rockville Property. A conference call followed with Mr. Levin and the Debtor and his new attorney Ms. Moore, whereby the Debtor advised he was going to the Rockville Property, which is now under construction.

19. The next day, March 22, 2023, the Debtor took it upon himself to arrive in

7

his wheelchair and destroy concrete work on the stairs of the Rockville Property. The Debtor demanded and threatened that the construction workers take orders from him, including to stop work and leave the job site. This was both dangerous physically and contrary to the insurance and work contracts of the Contractor because Debtor nearly injured himself in this escapade. Work was disrupted for two days, imposing further delay beyond March 22, 2023 on this project. This delay was supplemental to that imposed by a Motion to Convert filed by the Trustee earlier this year[2]. The Debtor returned to the Manor Care facility only after Mr. Levin visited the Rockville Property (interrupting much of Mr. Levin's day unnecessarily). Mr. Levin explained to the Debtor patiently and cogently that all financial expenditures had been well accounted for, transparently disclosed, and forwarded to Debtor previously. Mr. Levin did not have any answers to where Debtor put his explosives and ammunition which the Debtor wanted to retrieve as he expressed he wanted to return to Manor Care with such items for whatever reason.

20. These exchanges are unhelpful to completing the Debtor's Plan on time and with a minimum of interference. A copy of the affidavit referenced from Mr. Levin is attached hereto and incorporated herein as **Exhibit C**.

21. Mr. Rudow from Manor Care has also helpfully chimed in between March 22, 2023 – March 24, 2023 given what appears to be an unfortunate litigation that was escalated by the Debtor, with new counsel aiming to disrupt the implementation of the Plan herein. Mr. Rudow advises that the Debtor is creating significant post-petition expense in this matter by (i) not paying

---

[2] *See, eg* Motion to Convert [Dkt. 112]; Response [Dkt. 120] Trustee's actions have been unhelpful (stated kindly) to the administration of this successful and progressing 100% repayment Plan and Confirmation Order, and caused interruptions to the construction at hand and interference in the process that is ongoing. This will be addressed at a hearing scheduled in May, 2023.

his accrued portion of care, which Ms. Moore as counsel summarized as $20,000.00 or slightly higher; (ii) undertaking conduct which is costing Manor Care monies it intends to seek repayment of herein for massive piles of Amazon boxes[3] anew which will have to be moved to the Laurel Property this coming month by Debtor as they interfere with the operation of the facility; (iii) incurring claims by alleged threats against nursing home administration personnel including retrieval of weapons and firearms to be maintained in the Wheaton Manor Care facility. These issues are unhelpful to the full administration of the Debtor's Plan herein as they create the real and apparent risk of new liabilities for the Debtor.

22. This was then followed by notification from Mr. Rudow that a conference on discharge from the Manor Care facility was conducted, but ejection was not imminent because in a mediation the parties had put off the dispute given there was not crisis at the moment. The undersigned spent the better part of an afternoon conferring with Ms. Moore as counsel to the Debtor and reminding to no effect of the *res judicata* nature of the Plan and that Debtor could not return to live in the Rockville Property. However, Mr. Rudow well noted that care payments need to be made (perhaps from the monies that the Debtor is expending on significant Amazon purchases or his social security allotment from which does not pay for his present housing care). Likewise, to avoid post-confirmation escalations in claims and financial damages potentially available from Debtor's surplus after the Plan full administration, the Debtor needed to comply with the admonitions and requirements of Manor Care, summarized above.

23. Although the undersigned had hoped this matter would subside and resolve

---

[3] The Court will recall the significant issues the former Amazon boxes at another Manor Care facility caused and the costs for removal to the Rockville Property pre-confirmation.

9

itself into the obscurity of time as days passed (and the undersigned actually has other active exigent cases to work on presently)[4], the present Motion was not filed last week.  However, today Mr. Levin advises that he visited the Debtor and there remains a current demand from the Debtor to return to the Rockville Property. The Debtor also – despite the Plan and Confirmation Order consent and his testimony on September 27, 2023, **and all the updates** of all events by email, first class mail, and often by hand delivery by Mr. Levin, denies having any knowledge of his consent to the foregoing Rockville Property construction and sale commitments, or the Laurel Property consent that was also arrived at recently in February, 2023 with his siblings.  The Debtor has no idea how the estate funded the rehabilitation even though he has been told and shown many times by Mr. Levin, putting aside service of the motions herein and Orders upon the Debtor that tell it all like it is.

24.    It is *not* a matter within the Bankruptcy Court's limited jurisdiction – particularly post-confirmation – to enter into an equitable decree that controls or requires the Debtor's good behavior or honesty in connection with his present residency at the Manor Care Wheaton Facility. Nor is the confirmation of a Plan an opportunity to have a *Larry King* style ongoing and endless discussion over what will make the Debtor happy and content as his changing compass of observing reality spins from point to point.  A bankruptcy is about paying creditors.

25.    The Bankruptcy Court's jurisdiction post-confirmation in this matter is to enforce the Plan and Confirmation Order.  *See generally, Valley Historic v. Bank of N.Y.*, 486 F.3d 831, 838 (4th Cir. 2007) ("A bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect," binding the parties by its terms and precluding them "from raising claims or issues that they could have or should have raised before confirmation.")  Moreover, a bankruptcy

court always has jurisdiction to enforce its own orders and decrees. *See*, *In re Lazy Days' RV Center, Inc.*, No. 12-4047, 2013 WL 3886735 (3d Cir. July 30, 2013)  The Plan herein provides for no modification of its material terms, which here means the sale of the Rockville Property.  And if the Debtor could not find a reverse mortgage loan to buy out his siblings in 90 days, a then occurring sale of the Laurel Property following at some point after the 90 days is inevitable.

26. The Debtor and estate herein thus move the Bankruptcy Court to enforce the terms of the confirmed Plan that require after restoration and repair the sale of the Rockville Property must occur. That is all well under way and on schedule.  The repairs will be completed on schedule by April 7, 2023.  A contract of sale is anticipated to arrive at full value over $900,000.00 by May 1, 2023 as contemplated.  If there is a delay in the closing on a contract for financing or something of that ilk, the hearing in May, 2023 will tend to that administrative detail.  If the parties in this case relevant to the Laurel Property (*eg*; siblings and Debtor) want to proceed to restore the Laurel Property and thereby create value rather than sell a biohazard waste site on the open market for a fraction of its saleable value, they all need to agree in writing without further quibbling and jockeying for position to do so.  On the other hand, if the siblings and Debtor don't want to work toward joint gain and purpose, the Laurel Property can be sold at any time for about $250,000.00 and the proceeds will be held as agreed in the Listing Agreement to ensure the estate fully funds from the Rockville Property sale, if the Laurel Property should sell first.

27. Nothing in the Plan is consistent with the foregoing aberrant behavior recently allegedly displayed by the Debtor. Thus:

28. The Debtor should NOT be interfering (much less with separate counsel from Legal Aid who is not disclosed on the docket herein) with the administration of this Chapter 13 Plan,

particularly as to the sale of the Rockville Property on schedule and the ongoing wind up of final construction on site.

29.     The Debtor should NOT be creating claims or causes of action from Manor Care that could constitute post-confirmation damages or claims that could interfere with the Plan administration and thereby derail the Plan full administration occurring timely.

30.     The Debtor should NOT be agreeing and reneging on agreements with his siblings to vary from the Plan to first permit the Debtor a "*Hail Mary Pass*" as a last belated chance to retain the Laurel Property if the siblings and the Debtor want to proceed to restore and repair the Laurel Property so that the Debtor can have a second bite at the apple that was foregone to him, and then change his mind as happened today whereby the Debtor wants no restoration of the Laurel Property from his funds on hand. The Debtor and siblings will need to decide in the coming month or so what they want to do on the Laurel Property.  Until that decision is reached, the Laurel Property will sit vacant with an increasing bio-hazard decay that would be a good research site for further pandemic studies by a foreign government.

31.     A hearing is requested.  The Bankruptcy Court should set that in the Order for May 16, 2023 as is the next scheduled date. Should there by further interruptions with the Plan (which really constitute actionable violations of the automatic stay of 11 U.S.C. § 362(a)(3) by the Debtor and any third party acting in privity with him, including new counsel), the undersigned reserves the right to request an emergency hearing. The Debtor and estate consent to the entry of final Orders herein by the Bankruptcy Court pursuant to Local Rule 9013-6.  No memorandum is attached hereto pursuant to Local Rule 9013-2.

WHEREFORE, the Debtor requests that this Honorable Court enter an Order that:

(i)     Grants the Motion;

(ii)    Orders the Debtor and all working in privity with him to abide by and respect the terms of the Plan and Confirmation Order and not to further interrupt such remaining progress towards full administration of that Plan process; and

(iii)   Grants relief in the form of Order annexed hereto; and

(iv)    Grants such other and further relief as equity and justice may require herein.

>Respectfully Submitted,
>--------/S/ John D. Burns----------
>John D. Burns, Esquire (#22777)
>The Burns Law Firm, LLC
>6305 Ivy Lane; Suite 340
>Greenbelt, Maryland 20770
>(301) 441-8780
>*info@burnsbankruptcyfirm.com*
>Counsel to the Debtor

## **CERTIFICATE OF SERVICE**

          I hereby certify that on this 31st day of March, 2023, a copy of the foregoing Debtor's Motion and Order, was served via first-class mail, postage prepaid, or sent by ECF, upon:

***By ECF Notification Upon:***
Timothy Branigan, Chapter 13 Trustee
9891 Broken Land Parkway, Suite 301
Columbia, MD  21046
      Chapter 13 Trustee

Parties registered for ECF notification

***By Electronic Mail Upon:***
Jeanette Rice, Esquire
Office of the United States Trustee
6305 Ivy Lane; STE 340
Greenbelt, MD 20770

Adam Ross Levin
Homewise Realty Services, LLC
11140 Rockville Pike
Suite 420
Rockville, MD 20852

cmoore@mdlab.org
Christina Moore, Esquire
Legal Aid – Medical Placement Issues Counsel
For Debtor

williamrudow@rudowlaw.com
William Rudow, Esquire

ugotmold@yahoo.com
Ivelin Kostadinov, Contractor

William C. Bevan, Debtor
drwilliambevan@juno.com

***By First Class Postage Pre-Paid Mail Upon:***
Dr. William Bevan
ProMedica Skilled Nursing and Rehab (Manor Care)
11901 Georgia Avenue
Wheaton, MD 20902

                                              ------/s/ John D. Burns
                                              John D. Burns