UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| In re: | ) |
| | ) |
| WILLIAM CHARLES BEVAN | ) |
| | ) Case No. 22-12609 |
| Debtor | ) (Chapter 13) |
| | ) |

### REPLY ON MOTION TO ENFORCE CONFIRMED PLAN AND CONFIRMATION ORDER

WILLIAM CHARLES BEVAN (the "Debtor") files this Reply On Motion To Enforce Confirmed Plan and Confirmation Order (the "Reply"), on behalf of the estate and by and through counsel John D. Burns, Esquire, and The Burns Law Firm, LLC, states as follows:

### FACTUAL STATEMENT:

On or about May 13, 2022 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 13 in the United States Bankruptcy Court for the District of Maryland.

The Debtor is the owner of the Rockville Property situated at 11229 Empire Lane, Rockville, MD 20852 herein. The Debtor is a 1/4th owner of the Laurel Property situated at 3415 Wenona South, Laurel, MD 20724 herein. The confirmed Amended Plan [Dkt. 55] and the Confirmation Order entered on October 26, 2022 [Dkt. 80] mandate and provide authority for the restoration, rehabilitation and sale of the Rockville Property. The Plan and Confirmation Order in kind mandate and provide authority for the sale of the Laurel Property on the market (other than by reverse mortgage or purchase by Debtor) following 90 days after the foregoing Confirmation Date.

On March 31, 2023, the Debtor by counsel and representative to the estate was

1

required to file a Motion to Enforce Confirmed Plan (the "Motion to Enforce"). [Dkt. 130] The contents of the Motion to Enforce are incorporated hereto with exhibits by reference as though more fully recited herein.

The gravamen of the Motion to Enforce was a basic and simple request to have the confirmed Plan and Confirmation Order roll out for full administration and completion without constant interference and interruptions by various parties in interest. Specifically, here presently the Debtor has embroiled himself in a new dispute with Manor Care over his current housing (at Wheaton, MD not to be confused with the separate prior facility in Potomac, MD that was and remains a creditor herein). Reportedly, given allegations of weapons and firearms to be brought into the Wheaton facility by Debtor, and his accumulation of cumbersome personalty ordered on Amazon and irregular communications with Manor Care staff, and coupled with non-payment for his current care portion, Manor Care has recently sought and obtained an order from an ALJ to have him safely discharged to a new facility. The Debtor, with new counsel Ms. Moore, has filed a petition in the Circuit Court for some type of review of the discharge and that has been suspended it appears while the Debtor and Manor Care meet and confer to discuss the nature and timing of the discharge from Wheaton. The undersigned previously spent significant time with Senator Van Hollen's office and referring the Debtor to the Maryland Ombudsman so as to have these issues peacefully and summarily resolved in late 2022 and early 2023. Now, the situation has advanced to a more pressing level.

Although this is unfortunate as to its timing and uncertainty as to the safe placement of Debtor from Wheaton, MD, whether self-caused by Debtor or otherwise, the primary concern of the estate herein and to the effect of implementing the Plan to the Debtor, is the logistics of

2

completion and sale of the Rockville Property and the disposition by sale or repair and restoration and sale of the Laurel Property. As the Bankruptcy Court knows from the Plan and Confirmation Order, and the Motion to Enforce, the Rockville Property is slated to be completed on construction this month and sold in May, 2023. The Laurel Property was subject to a 90 day exclusivity period for the Debtor to seek refinancing and/or reverse mortgage to buy out by sale his 3 siblings. That did not happen and now the Laurel Property is to be sold on the open market. There is no deadline in the Plan for the sale of the Laurel Property. The Debtor and siblings entered into an agreement on February 15, 2023 subject to formalization and filing whereby the Laurel Property would be restored and repaired and each of the parties would have benefit from that process all as set forth in much greater detail in the Motion to Enforce. The sale of the Laurel Property would be projected in August, 2023, and the Debtor could be placed in the Laurel Property (assuming he uses funds on hand after full Plan administration to buy it) as a new rehabilitated residence as was projected in the Plan and explained further in the Motion to Enroll. The Debtor apparently has reneged on the February 15, 2023 commitment he made to his siblings upon retaining legal aid counsel. If that remains the case, the Laurel Property can be sold in its present condition which is uninhabitable and will bring very little to the owners including the Debtor upon sale.

   The Motion to Enforce was caused by an unfortunate intersection between the confirmed Plan and its necessity for completion, and the Debtor's interruption of these processes due to his ambivalence as to new living arrangements. The Debtor has made an unscheduled and disruptive visit to the Rockville Property last month, threatening workers on the site, and causing what has now been a week of damage and delay in the installation of the concrete and granite by actually attempting to enter a construction site with a wheelchair. The Debtor's new lawyer Ms.

Moore has at least on one email occasion asked to revisit the Debtor's return to Rockville (rather than sale) despite having heard from the undersigned in a preceding hour long call that retaining Rockville Property is not an option given the confirmed Plan and *res judicata* bases.  These exchanges occurred the day before Debtor's intrusive visit to the Rockville Property.  The Debtor has informed Mr. Levin after repeated requests and visits for financial documentation – all of which has been supplied time and time again to the Debtor – that he can just return to Rockville and notes his new lawyer directed him to visit Rockville.   There is an affidavit from Mr. Levin annexed to the Motion to Enforce which details these facts that do not need repeating herein.  Suffice it to say, Ms. Moore has emailed the undersigned late last week to advise that she denied directing the Debtor to visit Rockville and denied counseling the Debtor to disrupt the Plan.  When the undersigned requested *a writing to the Debtor* from Ms. Moore confirming this, Ms. Moore did not respond.  Debtor also reneged on his agreement reached on February 15, 2023 with his siblings as to the disposition of the Laurel Property.  When the undersigned has asked Debtor and then Ms. Moore as counsel for Debtor by email to decide if he is relocating to Laurel Property after repairs and restoration, all was already agreed on February 15, 2023, neither Debtor nor Ms. Moore responds.

This Chapter 13 case is ready for full administration next month, absent any repairs and restoration on Laurel Property previously requested by the Debtor and siblings.  Construction on the Rockville Property will wrap up on April 14, 2023, with this week's dedication of work to restore the concrete so that granite can go in for the front entrance area.  Had the Debtor not visited and created damage last month, this would have already been completed. Windows go in late April, 2023 as noted given supply chain delays.  The Rockville Property is on the market as a "coming soon," and will have active showings starting Friday, April 14, 2023 as an active listing.  It is likely

4

to be under contract on or before May 1, 2023, assuming the content of the Response filed by Manor Care does not dissuade active potential buyers who may be monitoring case filings herein. The Laurel Property can either be sold now, in deplorable condition for minimum dollars, or it can be restored and repaired and subject to new residency by Debtor to his great benefit with disability adaptation for his safety and comfort as was agreed on February 15, 2023 by the Debtor and siblings. Or it can be restored and repaired to create a benefit and profit to the Debtor when sold, all as has been ably explained in the Motion to Enforce.

   The undersigned naturally has gone to great lengths to resolve this unfortunate interference in the Plan administration. When Mr. Rudow has been asked why Manor Care cannot simply defer on its rights to replace Debtor to another safe discharge location for a month or two, the reasonable concern expressed is the safety to those at Wheaton from firearms, explosives and other means that are prohibited on site there, and really have no place in a skilled nursing facility. When Ms. Moore is asked why the Debtor cannot simply take whatever steps are reasonably necessary to defer these extraneous administrative matters to another time, including perhaps modifying his conduct so that Debtor complies with the Manor Care rules and policies on conduct, no response is received. The Debtor in turn has made unusual recent requests such as demanding that the agent in fact, Mr. Levin, not sell his "Rocket Ship" Chevy Corvette as provided for by an Order, and have the vehicle towed to Wheaton Manor Care so that it can be parked there, for what purpose it is unknown. Likewise, Debtor has directed that his hot tub formerly rotting and resident at the Rockville Property be transported to his room at Wheaton Manor Care. These suggestions from the Debtor on his vehicle and the hot tub have been conveyed to Manor Care and were politely declined by Manor Care. The requests by Debtor were unhelpful to begin with to the Plan

5

administration.

**MANOR CARE RESPONSE TO MOTION TO ENFORCE:**

Manor Care[1] has filed a Response to the Motion to Enforce [Dkt. 134] on April 6, 2023, which although styled as a supportive filing contains content which is confusing and speaks to remedies by Manor Care which were already overruled by the Confirmation Order and *res judicata*.

Specifically, Manor Care agrees and submits as does the estate herein and the agent in fact Mr. Levin that the Debtor is not being discharged from Manor Care of Wheaton to Rockville Property. Hopefully, that view is now universal for the reasons herein and in the Motion to Enforce.

Likewise, Manor Care submits that the confirmed Plan and Confirmation Order are intended, *inter alia*, to pay Manor Care of Potomac and its allowed claim in full. However, rather than simply leaving the supporting statement on the Plan there, Manor Care continues to allege that it is in a "unique position" because of a long litigation history and a Montgomery County Circuit Court case whereupon a sale trustee had been appointed. Manor Care likewise then goes into a recitation of its previously filed Objection to Exemptions, which the Debtor had responded to and the Bankruptcy Court had stayed pending administration and consummation of the Plan, now confirmed. Manor Care finally states cryptically that it "***was** willing to wait*" until the Rockville Property sold under the Plan" [Response at ¶ 5 (emphasis supplied)] but tellingly suggests that it has a right to seek relief from the automatic stay if the "Court set aside the Plan." If the case was dismissed, or converted then Manor Care contends it would have the right to sell the Rockville

---

[1] It is unclear if Manor Care as styled in the Response relates to the creditor Manor Care of Potomac, or as to the Debtor's residence Manor Care of Wheaton or both. Undersigned counsel treats them in tandem for ease of response.

Property or a Chapter 7 Trustee would have that right respectively.

It is unclear given for whatever motive might exist whether Manor Care is attempting to cause the Plan to fail full administration so it can again attempt to control the Rockville Property and the case at large. This would be unfortunate, but it is undeniable that Manor Care is simply making misstatements in its Response. To begin with, there is no Court procedure by which to "set aside the Plan." This is a confirmed Chapter 13 Plan and the Confirmation Order is a final Order. It is binding upon all by *res judicata*. *See, In Re: N.Hess & Sons, Inc., t/a Hess Shoes*, 218 B.R. 354 (Bankr. D. Md. 1998), citing to *In re Varet Ent., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) Secondly, as Manor Care is well aware, the Plan itself provides that there is to be no conversion or dismissal of this Chapter 13 case until the sale of the Rockville Property and the Laurel Property have been sold and the sales have closed. *See, Plan* [Dkt. 55; p.9] Finally, if Manor Care were to prevail on its unusual theory of objection to exemption, all that Manor Care could achieve is payment of its allowed claim in full. This is the same remedy it now has by agreement under the Plan as confirmed. Accordingly, there is no basis at law or under the Plan and Confirmation Order for Manor Care to aver that there can be a "set aside" of the Plan, or a conversion or dismissal herein prior to the sales and closings on Rockville Property and Laurel Property. These assertions and frolics and detours by Manor Care have no place in a supportive Response to the Motion to Enforce. All Manor Care of Potomac is entitled to is the payment of its allowed claim, which should well happen upon the sale of the Rockville Property or at worst, upon sale of the Laurel Property under the confirmed Plan.

These digressions by Manor Care also have real consequences and tend to cause real potential harm to the estate as did the Trustee's Motion to Convert Case filed earlier this year. Various potential buyers are in contact from time to time on the Rockville Property, as they track

7

filings in this case. If such buyers were to draw the wrong and improper impression that this case could be subject to a forced sale by Manor Care's pre-petition trustee herein, or that a conversion of this case is imminent where a Chapter 7 Trustee could achieve a forced sale or at least one conducted for less than fair market value by auction or Trustee's realtor, the observant buyers will likely hold back on making offers as Mr. Levin lists this Rockville Property for sale on April 14, 2023, with an open house to be scheduled for April 15, 2023 and April 16, 2023. A lower than expected sales price offer would be the result of such irresponsible filings pending on the docket. Hopefully, that shall not follow here.

The undersigned had contemplated advancing the hearing set presently for May 16, 2023 so that the pending Motion to Enforce could be heard and expediently resolved. However, given that counsel for Manor Care has not filed a Motion for Relief From Stay (with no cause that would be evident on any theory), and given that the Debtor *pro tempore* has appeared to cease and desist on interference in his own Plan administration, the estate reserves all rights to seek an advanced hearing prior to that date already reserved for May 16, 2023 herein, but does not do so at this time. If the sales efforts on Rockville Property face buyers who may be hesitant to bid an offer reflective of fair market value (again in the mid-$900's for Rockville as offered), an advancement of the hearing may be needed to resolve the Trustee's Motion to Convert and the Manor Care Response to the Motion to Enforce so that full administration of the Plan may be reached without further impediments and interference. No memorandum is attached hereto pursuant to Local Rule 9013-2.

WHEREFORE, the Debtor requests that this Honorable Court enter an Order that GRANTS the Motion to Enforce and OVERRULES the Response of Manor Care to the extent

8

inconsistent with the Motion to Enforce and this Reply; and GRANTS such other and further relief as may be required by equity and justice herein.

                                                           Respectfully Submitted,
                                                           --------/S/ John D. Burns----------
                                                           John D. Burns, Esquire (#22777)
                                                           The Burns Law Firm, LLC
                                                           6305 Ivy Lane; Suite 340
                                                           Greenbelt, Maryland 20770
                                                           (301) 441-8780
                                                           *info@burnsbankruptcyfirm.com*
                                                           Counsel to the Debtor

## **CERTIFICATE OF SERVICE**

              I hereby certify that on this 10th day of April, 2023, a copy of the foregoing Debtor's Response was served via first-class mail, postage prepaid, or sent by ECF, upon:

***By ECF Notification Upon:***
Timothy Branigan, Chapter 13 Trustee
9891 Broken Land Parkway, Suite 301
Columbia, MD 21046
        Chapter 13 Trustee

Parties registered for ECF notification

***By Electronic Mail Upon:***
Jeanette Rice, Esquire
Office of the United States Trustee
6305 Ivy Lane; STE 340
Greenbelt, MD 20770

Adam Ross Levin
Homewise Realty Services, LLC
11140 Rockville Pike
Suite 420
Rockville, MD 20852

cmoore@mdlab.org
Christina Moore, Esquire
Legal Aid – Medical Placement Issues Counsel
For Debtor

williamrudow@rudowlaw.com
William Rudow, Esquire

ugotmold@yahoo.com
Ivelin Kostadinov, Contractor

William C. Bevan, Debtor
drwilliambevan@juno.com

***By First Class Postage Pre-Paid Mail Upon:***
Dr. William Bevan
ProMedica Skilled Nursing and Rehab (Manor Care)
11901 Georgia Avenue
Wheaton, MD 20902

                                            ------/s/ John D. Burns
                                                  John D. Burns