**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Case No. 22-12609** |
| **WILLIAM CHARLES BEVAN** | ) | **(Chapter 7)** |
| | ) | |
| **Debtor** | ) | |

---

**UNITED STATES TRUSTEE'S COMBINED OBJECTION TO APPLICATION FOR
COMPENSATION FOR ATTORNEY JOHN BURNS AND
<u>MOTION TO EXAMINE ATTORNEY'S FEES</u>**

Gerard R. Vetter, Acting United States Trustee for Region Four (the "United States Trustee"), by counsel, pursuant to 11 U.S.C. §§ 329 and 330, objects to the First and Final Application for Pre-Conversion Administrative Compensation for Former Counsel for the Chapter 13 Debtor and for Reimbursement of Expenses Combined with Notice Thereof (May 11, 2022 – May 18, 2023) ("Application for Compensation") filed by John Burns ("Mr. Burns"). The United States Trustee also moves this Court to examine the attorney's fees charged and paid to Mr. Burns. In support of this Objection and Motion, the United States Trustee respectfully states as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      Jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for this motion are §§ 105 and 329 of the Bankruptcy Code.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      Pursuant to Local Rule 9013-6, The United States Trustee consents to entry of a final order or judgment in this matter by a bankruptcy judge.

## INTRODUCTION

5.      Between May 13, 2022 and May 18, 2023, attorney John Burns acted as counsel for William Bevan (the "Debtor" or "Mr. Bevan").  After confirmation of the chapter 13 plan, and relations broke down between Mr. Burns and the Debtor, Mr. Burns began to claim he represented the estate,  or a "Special Purpose Entity" or "SPE" for which Realtor, Ross Levin ("Mr. Levin"), was purportedly the Debtor's agent in fact.  Mr. Burns claimed that this "SPE" empowered Mr. Burns and Mr. Levin to control all aspects of the chapter 13 case and the Debtor's property without the Debtor's consent.  To wit, Mr. Burns made decisions regarding the Debtor's bankruptcy case and property contrary to the express wishes of the Debtor, thereby breaching his ethical duties to the Debtor.

6.      Mr. Burns breached his ethical duties by creating a conflict with the Debtor by not abiding by his client's instructions, filing pleadings without the Debtor's consent, filing pleading in direct opposition to the Debtor's position, and disclosing confidential information and communications.  Mr. Burns then failed to withdraw after the conflict developed between him and the Debtor

7.      As described more fully below, the Court should require Mr. Burns to return all of the fees he received from the Debtor and deny his request for compensation because, *inter alia*, his services provided little benefit to the Debtor, and he violated numerous ethical rules.

## FACTS AND BACKGROUND

8.      In early May 2022, William Bevan contacted Mr. Burns regarding representation in a chapter 13 bankruptcy case.  Dkt. No. 354 at p.3.

9.      On May 13, 2022, the Debtor executed a written retainer agreement with Mr. Burns. Dkt. No. 354-2.

10.     On March 13, 2022, Mr. Burns filed this instant chapter 13 case on behalf of the Debtor.

11.     Timothy P. Branigan ("Chapter 13 Trustee") was appointed as the chapter 13 trustee.

12.     At the time the case was filed, the Debtor's schedules showed that the Debtor had assets of $1,472,400.35, secured debt of $473,818.36, and priority unsecured debt of $49,609.42. Dkt. No. 19.

13.     On September 26, 2022, the Debtor filed Amended Schedule A/B showing he owned the following assets:

    a.     11229 Empire Lane, Rockville, MD ("Rockville Property"), valued at 930,000;

    b.     1/4 interest in 3415 Wenona South, Laurel, MD ("Laurel Property"), valued at $50,420; and

    c.     A Social Security Benefit Annuity, valued at $428,595.68.

Dkt. No. 64.

14.     The Debtor filed his original chapter 13 plan on June 14, 2022. Dkt. No. 24.

15.     On July 28, 2022, the chapter 13 plan was denied with leave to amend.  Dkt. No. 45.

16.     The Debtor filed an amended chapter 13 plan ("Amended Plan") on August 15, 2022.  Dkt. No. 55.  A contested hearing on the Amended Plan was held on September 22, 2022. Dkt. No. 67.  The Amended Plan was confirmed on October 26, 2022 ("Confirmed Plan").  Dkt. No. 80.

17.     The Confirmed Plan contained several non-standard provisions, which were included in paragraph 9.  The Confirmed Plan provided, in relevant part, that realtor Ross Levin

- 3 -

("Mr. Levin") would act as the Debtor's attorney in fact for the limited purpose of selling the Debtor's real properties. Dkt. No. 55 at 9.

18.     On February 3, 2023, the Chapter 13 Trustee filed a Motion to Convert Case from Chapter 13 to Chapter 7. Dkt. No. 112.

19.     On February 21, 2023, Mr. Burns filed a Response to the Motion to Convert. Dkt. No. 120.

20.     From the record it appears that in February or March 2023, the relationship between Mr. Burns and the Debtor broke down. *See* Dkt. Nos. 130 and 354.

21.     As relations between Mr. Burns and the Debtor deteriorated, Mr. Burns started to file pleadings with the Court claiming that he represented the estate, a "Special Purpose Entity" ("SPE"), and/or Mr. Levin as the agent in fact for an SPE. Prior to that time, Mr. Burns claimed that he represented the Debtor.

22.     On March 16, 2023, Mr. Bevan hired Christina Moore of Maryland Legal Aid to represent him in a request for judicial review of a decision by an Administrative Law Judge authorizing his involuntary discharge from Manor Care ProMedica's facility in Wheaton, Maryland. Dkt. No. 149-1. Mr. Burns claimed that he believed that Ms. Moore was advising the Debtor to move back into the Rockville Property, thereby interfering with the Debtor's performance under the Confirmed Plan. *See* Dkt. No. 150.

23.     On March 31, 2023, Mr. Burns filed a Motion To Enforce Confirmed Plan and Confirmation Order ("Motion to Enforce"), which he claimed was filed by the Debtor "on behalf of the estate". Dkt. No. 130 at 1. In fact, the Motion to Enforce was not filed on behalf of the Debtor. Mr. Burns stated that the reason he filed the motion was because of the Debtor's "overt actions taken over the past month to now interfere and impose his intentions on the actual

- 4 -

construction at the Rockville Property."  Clearly, Mr. Burns was not acting in the Debtor's best interest.  Dkt. No. 130 at 7.

24.     In the Motion to Enforce, Mr. Burns admitted that the Debtor, instead of proceeding with a sale, desired to reside in the Rockville Property after being discharged from the Manor Care assisted living facility.  Arguing against his client's position, Mr. Burns characterized his client's desire to reside in the Rockville Property as "bad faith and inconsistent with the law of the case and barred by consent and judicial estoppel."  Dkt. No. 130 at 7.  Mr. Burns further stated that "the Debtor took it upon himself after engaging Ms. Moore to knowingly, intentionally and contrary to law frustrate the purpose and effect of his own Plan and Confirmation Order."  Dkt. No. 130 at 7.

25.     The Proposed Order for the Motion to Enforce requested the following relief from the Court:

> ORDERED, that the Debtor and anyone acting in privity[1] with the Debtor comply with the Plan and Confirmation Order as to any actions which could interfere, contravene, or contradict the Plan, Confirmation Order and any of the Orders this Bankruptcy Court has entered since the Confirmation Order; and it is further
>
> ORDERED, that the Debtor and anyone acting in privity with the Debtor SHALL avoid interfering with construction or sale efforts the Rockville Property as they are now ongoing, and that the Debtor shall take no actions to regain entrance to the Rockville Property including for  the purposes of reestablishing residency there; and it is further
>
> ORDERED, that the Debtor and anyone acting in privity with the Debtor SHALL avoid engaging in conduct in respect of the Debtor's residency at Manor Care Wheaton which may cause or tend to create a civil claim against the estate herein that may interfere with the Plan, including but not limited to the conduct set forth in the Motion, and the Debtor shall make his arrangements with Manor Care as to cost of care for his ongoing housing in a manner that does not infringe upon property of the estate other than the Debtor's current earnings, his social security payments, and his surplus funds available, if any, following the full administration of the confirmed Plan; and it is further

---

[1] "[A]nyone acting in privity", appears to be directed at attorney Christina Moore, whom Mr. Burns believed was encouraging the Debtor to move into the Rockville Property.  *See* Dkt. No. 150.

ORDERED, that should the Debtor and anyone acting in privity violate this Order, relief to the estate is available in the form of a contempt motion both under this Order and to the extent cognizable under 11 U.S.C. § 362(a)(3), which may including sanctions, damages and attorneys fees against any person or entity interfering with the Plan implementation or otherwise violating this Order, after notice and a show cause hearing.

Dkt. No. 130-4 ¶¶ 3-6.

26.    Not only did Mr. Burns reveal confidential information in the Motion to Enforce, but he also attached as exhibits, confidential communications with the Debtor.  *See* Dkt. Nos. 130, 130-1, and 130-2.

27.    Despite the Debtor's repudiation of the Confirmed Plan and expressed intent to reside in the Rockville Property, Mr. Burns continued efforts to rehabilitate and sell the Rockville Property.  For example, on April 3, 2023, Mr. Burns filed a Line Reflecting Change Order to Construction Contract for Tile and Duct Work.  Dkt. No. 133.

28.    On April 10, 2023, Mr. Burns filed a Reply to the Motion to Enforce ("Reply"), purportedly on behalf of the estate.  Dkt. No. 135.  In the Reply, Mr. Burns claimed that "[o]n March 31, 2023, the Debtor by counsel and representative to the estate was required to file a Motion to Enforce Confirmed Plan (the "Motion to Enforce").  Dkt. No. 135 at 1-2.

29.    In addition to asking for relief contrary to the Debtor's wishes, the Reply reveals confidential client communication and information that is potentially damaging to the Debtor.  Dkt. No. 135 at 3-5.

30.    In April 2023, the Debtor informed Mr. Levin that he planned to return to the Rockville Property upon being discharged from the Manor Care facility.  Dkt. No. 150-1.

31.    When Mr. Burns learned from Mr. Levin that the Debtor planned to return to the Rockville Property, he sent an email to Christina Moore threatening her with contempt of court for advising the Debtor to return to the Rockville Property.  On April 21, 2023, Mr. Burns filed a Line

Supplying Admonishment Email on Planned Disruptions and Willful Contempt of Confirmed Plan Contemplated for April 21, 2023 on Rockville Property (Dkt. No. 150) and attached a copy of the email he sent to Ms. Moore.  Dkt. No. 150-1.

32.    Additionally, on April 21, 2023, Mr. Burns filed an Affidavit on behalf of Ross Levin revealing communications with the Debtor and Christina Moore.  Dkt. No. 151-1.

33.    On April 24, 2023, Mr. Burns filed a Line Supplying Emails in Aid of Status Conference.  Dkt. No. 153.  The email filed with the Court was an email sent by the Debtor to Mr. Burns on April 21, 2023,  Dkt. No. 153-1, which was a further breach of confidentiality.

34.    On April 25, 2023, Mr. Burns filed a Motion for Order to Require Debtor to Reenter Rockville Property and Assume Possession and Dominion Over Same on or Before May 1, 2023 Filed at the Direction of William C. Bevan ("Motion to Reenter").  Dkt. No. 155.

35.    In paragraph 3 of the Motion to Reenter, Mr. Burns asserted:

> This Plan and the Confirmation Order involve a SPE; namely, Mr. Levin as a remote bankruptcy entry to sever the Debtor's capacity and agency to make any direction which is contrary to the Plan and Confirmation Order or actions taken thereby under. The Bankruptcy Court thereby inferentially resolved that any and all contrary directions and demands and contentions made heretofore by the Debtor are without a good faith factual or legal basis.

Dkt. No. 155 at 3.

36.    While Mr. Burns filed the Motion to Reenter as requested by the Debtor, not only did Mr. Burns not advocate for the Debtor's position, but he also actively opposed the Debtor's position:

> The undersigned sees no legal basis to support the relief which has been already opposed by Old Georgetown Village Homeowners [Dkt. 138] when outlined in the Request for Emergency Hearing at Dkt. 140, and opposed by ManorCare of Bethesda MD, LLC [Dkt. 134], other than the fact that the Debtor has a right to have his request presented before the Bankruptcy Court for a ruling, and on that basis alone the undersigned has remitted such request to the Bankruptcy Court so it may be acted upon. Although the Bankruptcy Court may see such a request as a

wasted effort given the general observations of yesterday; however, the MSBA ethics committee was clear that the specific request by the Debtor should be put before the Bankruptcy Court for a Determination.

Dkt. No. 155 at 4.

37.        On April 26, 2023, Mr. Burns filed a Motion to Sell 11229 Empire Lane; Rockville, MD 20852 Free and Clear of Liens and Notice of Motion.  Dkt. No. 157.  The content of the motion indicates that it was not filed with the permission of the Debtor.  *See* Dkt. No. 157 at 4.

38.        On April 27, 2023, Mr. Burns filed a Line Supplying Email of Debtor and Response to Service List In Aid of Emergency Hearing and Motion to Enforce Plan on behalf of William C Bevan Jr.  Dkt. No. 160.  The email attached shows that Mr. Burns copied numerous third parties, including the undersigned attorney, on what should have been a confidential communication with his client.  Dkt. No. 160-1.

39.        On April 29, 2023, Mr. Burns filed a Line Extending Engagement of Agent In Fact Adam Ross Levin and Homewise Realty Services, LLC on Listing Agreement for Laurel Property Through and Including August 31, 2023 on behalf of William C Bevan Jr.  Dkt. No. 168.  The filing of this pleading was not authorized by the Debtor.  In footnote 1, Mr. Burns states:

> On or about April 27, 2023, the Debtor issued an email terminating the Agent in Fact and the efficacy of that act under and SPE Plan need be determined by the Bankruptcy Court at an upcoming emergency hearing on May 3, 2023. Thus, the extension on listing agreement is indeterminate solely in that regard.

Dkt. No. 168 at 2.

40.        On April 29, 2023, Mr. Burns filed a Motion to Sell 3415 Wenona S. Laurel MD 20724 Free and Clear of Liens and Notice of Motion.  Dkt. No. 169.  This motion was also not authorized by the Debtor, as the Debtor had terminated Mr. Levin on April 27, 2023.

41.     On April 29, 2023, Mr. Burns filed a Status Report with Attachments in Aid of Emergency Hearing, Motion for Relief by Debtor, and Motion to Enforce Plan by Estate SPE for Debtor for May 3, 2023 Hearing on behalf of William C Bevan Jr. ("Status Report").  Dkt. No. 171.  The Status Report included emails that contained confidential information. The emails revealed that the Debtor was seeking to terminate Mr. Burns's representation, but Mr. Levin stated that Mr. Burns was employed to represent the estate's "Special Purpose Entity" and Mr. Bevan did not have the authority to terminate Mr. Burns.  Dkt. No. 171 at 3.

42.     On April 30, 2023, Mr. Burns filed a Second Motion to Sell 11229 Empire Lane; Rockville, MD 20852 Free and Clear of Liens.  Dkt. No. 173.  This filing was not authorized by the Debtor because prior to this filing, the Debtor had sent emails terminating both Mr. Levin and Mr. Burns.

43.     On May 5, 2023, Mr. Burns filed a Line Supplying Concerned Email From Broker For Buyer On Rockville Property Requested to be Placed Before the Bankruptcy Court Relative to May 3, 2023 Hearing Matter on behalf of William C Bevan Jr.  Dkt. No. 177.  The content of the Line shows this filing was not authorized by the Debtor and directly opposed the Debtor's position.  In the Line Mr. Burns states:

> Mr. Levin well understands and has expressed from communications as recent as late last week that Dr. Bevan fully intends to return to the Rockville Property and frustrate any sale thereof with all of this effort and boundless available time. The Bankruptcy Court will recall from the prior filings and Mr. Levin's forthcoming testimony that Dr. Bevan chose to appear at the Rockville Property on March 22, 2023, after meetings and discussions about housing options with Legal Aid, thus creating much tumult and this has been the subject of two (2) open house showings whereby two separate buyers have asked about it as the disruption is talked about widely in the gated otherwise serene upscale homeowner community.

Dkt. No. 177 at 1-2.

44.    On May 3, 2023, in the Motion to Reschedule Cancelled Emergency Hearing Concurrent with Merits Hearing on May 16, 2023 at 2:00pm. Dkt. No. 178.  Mr. Burns states that the motion is filed by "Willams Charles Bevan (the "Debtor"), by and through undersigned counsel to the SPE and estate, John D. Burns, Esquire, and The Burns Law Firm, LLC."  The Debtor did not authorize filing of this motion.    In addition, Mr. Burns disclosed confidential client communications and information.  In the motion Mr. Burns states:

> The Debtor has been debriefed – thoroughly – as to his fiduciary duties to the estate and his consequences of violating the Confirmation Order through repetitive willful and intentional contempt, including last evening anew by Mr. Levin. As the Debtor has been made aware for some time now, the consequences for an act of willful civil contempt include fines, penalties and incarceration.

Dkt. No. 178 at 1-2.

> The Debtor has been warned – repeatedly and more forcefully – since his contemptuous interactions with the Rockville Property on March 22, 2023 to stay away and to focus on his housing options from a peaceful and patient perspective of placement into another safe location skilled nursing facility in due course of time as will be negotiated between Mr. Rudow and Ms. Moore. Most importantly, the concerns of Ms. Williams as the proposed buyer of the Rockville Property have been met by undersigned counsel and Mr. Levin so that her firm interest and dedication to the purchase of the Rockville Property on very favorable terms to the estate will not be thwarted by some unfortunate and errant actions of the Debtor herein.

Dkt. No. 178 at 2-3.

45.    On May 14, 2023, Mr. Burns filed a Line in Furtherence [sic] of Motion for Relief [Dkt. 155], Motion to Enforce Plan [Dkt. 130], Motion to Sell Empire Lane (Rockville Property) [Dkt. 173]; and Motion to Sell (Laurel Property) [Dkt. 169] and All Responses and Replies, Hearing Notices, and Prior Praecipes Thereupon.  Dkt. No. 185.  Mr. Burns claimed that the Line was filed by "William Charles Bevan (the "Debtor" or "Dr. Bevan"), by and through the estate and the SPE agent in fact Adam Ross Levin".  Mr. Burns makes it clear in the Line that he is not representing the interests of the Debtor:

- 10 -

The Objections to the Rockville Property and Laurel Property motions to sell and respective contracts came due on May 10, 2023 at 12:00pm ET, and no objections were filed. [Dkts. 175, 176]. The Debtor has been fully apprised of these contested matters, not only orally but by hand delivery (Debtor refused to sign and acknowledge hand delivery service) and by mail and by email. The Debtor, in proper person, despite the tenet and decree of his Confirmation Order and his Plan which was filed and confirmed by his full informed consent, continues to protest the sales by indirect means to the tribunal, although he has in his current status quo with Manor Care skilled nursing facility neither directed any opposition be filed nor has he filed any opposition pro se. The Orders on those motions to sell should be held pending the hearing on May 16, 2023 as the Debtor personally has positions on the matters to present to the Bankruptcy Court.

Dkt. No. 185 at 3.

Accordingly, the Bankruptcy Court as a component of the aforementioned Motion for Relief shall be requested by the Debtor in proper person to turnover the keys for Rockville Property and Laurel Property. The estate by and through the agent in fact, and at least creditors (Manor Care and the HOA on Rockville Property) protest this relief, as do the aspirant buyers of the Rockville Property and Laurel Property.

Dkt. No. 185 at 9.

46.     Further in the Line, Mr. Burns revealed client confidences, and included as exhibits copies of emails he sent to the Debtor, which show that both Mr. Levin and Mr. Burns believed they had the authority to withhold the keys to the Debtor's properties.  Dkt. No. 185 at 5-8.

47.     On May 14, 2023, Mr. Burns filed a Supplement to Line in Furtherence [sic] of Motion For Relief [Dkt. 155], Motion to Enforce Plan [Dkt. 130], Motion to Sell Empire Lane (Rockville Property) [Dkt. 173]; and Motion to Sell (Laurel Property) [Dkt. 169] and All Responses and Replies, Hearing Notices, and Prior Praecipes Thereupon.  Dkt. No. 186.  In the Supplement, Mr. Burns states it was filed on behalf of William C Bevan Jr., "by and through the estate and the SPE agent in fact Adam Ross Levin."  The Supplement consists of confidential communications between Mr. Burns and the Debtor.

48.     On May 15, 2023, Mr. Burns filed a Line Regarding Debtor's Instructions to Bankruptcy Judge on behalf of William C Bevan Jr.  Dkt. No. 187.  While Mr. Burns claims the

document is the Debtor's instructions to the Bankruptcy Judge, the attachment is a confidential communication between the Debtor and Mr. Burns.  Dkt. No. 187-1.

49.    On May 16, 2023, after appearing for a hearing where the Court pointed out Mr. Burns's conflict of interest, Mr. Burns filed a Motion to Withdraw as Attorney.  With respect to the hearing, Mr. Burns states, "the Bankruptcy Court advised the undersigned of its concerns that there was an "irreconcilable conflict" between the confirmed Plan requirements and the Debtor's current protestations, which as noted were always anticipated in the framing of the Plan and its confirmation given the terms insisted upon."  Dkt. No. 210 at 4-5.

50.     In the Motion to Withdraw, Mr. Burns refers to himself as "counsel to the Debtor, and counsel to the Agent in Fact, also referred to by the undersigned as the special purpose entity, Adam Ross Levin in implementation of confirmed Chapter 13 Plan of Rehabilitation."  Dkt. No. 192 at 1.

51.    Along with the Motion to Withdraw, Mr. Burns submitted a proposed order titled: Order Granting Motion to Withdraw as Counsel for Debtor and as Counsel to Agent In Fact in Implementation of Confirmed Chapter 13 Plan of Rehabilitation and Request for Waiver of Seven (7) Day Notice Otherwise Required by Local Rule 9010-4.  Dkt. No. 192-1.  However, when the Court granted Mr. Burns's Motion to Withdraw, the Court did not use Mr. Burns's proposed order but instead entered an order striking Mr. Burns's appearance as counsel for the "DEBTOR".  Dkt. No. 193.

52.    Soon after Mr. Burns's appearance was stricken as counsel for the Debtor, he continued filing pleadings containing confidential information that were adverse to the position of his now former client.

53.    On May 24, 2023, Mr. Burns filed a Response of The Burns Law Firm, LLC as Administrative Expense Claimant and Former Counsel to Debtor and SPE Estate Agent In Fact By Confirmation of Plan Relative to Open Filings.  Dkt. No. 210.  In the Response, Mr. Burns uses information obtained during his representation of the Debtor in a manner that is detrimental to his former client.  For example, Mr. Burns makes the following statements:

> With great respect and deference, the undersigned disagreed and disagrees now that the Debtor's particularized demands forwarded to the tribunal created a basis for the Court to diverge from the Plan or to suggest counsel step aside. The Debtor waived all rights at the confirmation hearing to the extent inconsistent with the Plan and Confirmation Order. The Plan is the Plan. It says what it says with finality, binding on Debtor and all others alike.

Dkt. No. 210 at 5.

> Whether the Debtor has so unreasonably enraged the tribunal by his long parade and list of committed conduct herein including alleged contemptuous abnegation of the Plan and Confirmation Order in this case such that the Bankruptcy Court would ignore the confirmed res judicata Plan terms and simply toss the Debtor to the delirious asset hungry wolves of Chapter 7 trustee exile is not something the undersigned needs to comment upon at this time. It is simply not for the undersigned to suggest that holding a Court up in its afternoon docket for several hours on May 16, 2023 while the Debtor delayed as he devoured and gorged on his Manor Care victuals for a leisurely lunch before departing for Greenbelt is something that should have a consequence.

Dkt. No. 210 at 7.

54.    On June 13, 2023, on the motion filed by the Chapter 13 Trustee, this case was converted to chapter 7.

55.    Janet M. Nesse ("Chapter 7 Trustee") was appointed as the chapter 7 trustee.

56.    On October 31, 2023, Mr. Burns filed his Final Application for Compensation and Reimbursement (Pre-Conversion) for John D. Burns, Debtor's Attorney  ("Application for Compensation").  Dkt. No. 354.  In the Application for Compensation, Mr. Burns states:

> "[C]ounsel forwarded the Debtor's ever escalating contrary requests to the Bankruptcy Court which differed from the requirements of the Plan that the Debtor

had irrevocably agreed to abide by in September, 2022 at the confirmation hearing and under the confirmation order entered in October, 2022."

*Id*. at 3-4.

The Firm was required to remove its appearance when the Debtor insisted that he was not consenting to the representation of the estate's interest by the Firm under the Plan, as he had agreed, by a Plan agent in fact.

*Id.* at 4.

The [Debtor's] visit was for one purpose: Disruption of the Plan and work on the Rockville Property. He claimed to have the right to perform this because the Rockville Property was his own asset, ignoring it had been irrevocably pledged it to sale under the Plan assigned to be sold for the benefit of the estate. Worse still, it appears the Debtor engaged in mendacity and claimed by justification that his attorney Christina Moore had counseled him to make this disruptive visit. There is video of the visit. It is disturbing to the undersigned.

*Id*. at 38-39.

## **ARGUMENT**

### A. **Standards for Compensation**

57.    The issues surrounding Mr. Burns's fees in this case are governed primarily by sections 329 and 330 of the Bankruptcy Code.  Section 329(b) of the Bankruptcy Code and Bankr. R. Civ. P. 2017, allow the court to review and adjust the compensation of a debtor's counsel if "such compensation exceeds the reasonable value of any such services."  11 U.S.C. § 329(b).  In enacting this section, Congress sought to police payments to counsel, to guard against overreaching by the debtor's attorney and to provide protection for creditors.  *Jensen v. U.S. Trustee (In re Smitty's Truck Stop)*, 210 B.R. 844, 848 (10th Cir. BAP 1997); *In re Dixon*, 143 B.R. 671, 676 (Bankr. N.D. Tex. 1992).

Section 329(b) ... authorizes the Court to order the refund of any amount over and above the reasonable value of the services rendered, regardless of whether the compensation was paid by the estate or a non-debtor entity. In order for this provision to have full effect, commiserate [sic] with its obvious intent, it is

- 14 -

imperative that counsel fully disclose the compensation arrangement as required by Section 329(a).

*In re Gay*, 390 B.R. 562, 570 (Bankr. D. Md. 2008).

58.    An attorney for a chapter 13 debtor is compensated pursuant to Section 330 (a)(4)(B) of the Bankruptcy Code which provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B).

59.    Section 330(a)(4)(B) then directs the Court, in considering whether and to what extent to allow compensation to an attorney representing a debtor in a chapter 13 case, to consider "the benefit and necessity of such services to the debtor and the other factors set forth in [Section 330]." 11 U.S.C. § 330(a)(4)(B). Reasonable compensation for a debtor's attorney in a chapter 13 case is, therefore, to be determined by taking into account factors including: the time spent; normal and customary rates charged; whether the services were necessary and beneficial; whether the services were performed within a reasonable amount of time under the circumstances; whether the attorney is board certified or particularly skilled; and whether the compensation is "reasonable based on the customary compensation charged by comparably skilled practitioners" in non-bankruptcy cases. *In re Long*, 553 B.R. 266, 274 (Bankr. M.D. Pa. 2016).

60.    Section 329(b) imposes on the Court an "obligation to review debtor's counsel's fees and order the return of compensation found to be excessive." *In re Tanamor*, Case No. 10-25530-TJC, 2013 WL 3938978 at *4 (Bankr. D. Md., July 31, 2013).

61.    Ordering the return of compensation under Section 329 is an appropriate remedy where debtor's counsel's services are insufficient and ineffective in order to "redress losses caused

by insufficient work by counsel." *In re Moragne*, No. 12-00324, 2013 WL 3336605 at *4 (Bankr. D. Haw. July 2, 2013); *Hale v. U.S. Trustee*, 509 F.3d 1139, 1147 (9th Cir. 2007) (finding a return of compensation under Section 329(b) an appropriate remedy where attorneys prepared documents which were incomplete and erroneous).

62.    Courts have held that unethical conduct provides a basis to order return of compensation under Section 329. *See In re Engel*, 246 B.R. 784, 793-94 (Bankr. M.D. Pa. 2000); *Torres v. Chang* (*In re Chang*), Case No. 11-10862-WIL, Adv. Pro. 13-00284, 2014 WL 4929062 (Bankr. D. Md. Sept. 30, 2014).

63.    The burden is on the professional seeking fees to demonstrate that he is entitled to those fees. *In re Vu*, 366 B.R. 511, 521 (D. Md. 2007); *In re Information Network, Inc.*, 465 B.R. 66, 68-69 (Bankr. D. Md. 2011); *In re Bernard Hill, Inc.,* 133 B.R. 61, 69 (Bankr. D. Md. 1991). It is Counsel's burden to demonstrate that a $139,045.12 fee is reasonable in a case where none of Debtor's objectives were achieved, the Debtor is left in a worse financial position than if the case had never been filed, and counsel did not represent the interests of the Debtor.

**B.  Mr. Burns Provided No Benefit to Debtor and Did Not Represent Debtor's Interests**

64.    Mr. Burns is seeking $139,045.12 in fees, but the value of his work was $0.  He provided no benefit to the Debtor because the Debtor is in a worse financial position than before he entered bankruptcy.

65.    Mr. Burns did not achieve the Debtor's objectives in filing a chapter 13 bankruptcy case, both of the Debtor's properties have been sold, a significant portion of his exempt retirement funds have been liquidated, and Mr. Burns is seeking $139,045.12 in attorney's fees.  The Debtor's financial position is far worse than if this case had been originally filed as a chapter 7 or if the Debtor never filed for bankruptcy at all because the Debtor would still have his exempt retirement

funds.  Mr. Burns's deficient representation caused great expense to the Debtor with little benefit.
Moreover, the case is replete with ethical violations.

66.    Also, after the chapter 13 plan was confirmed, Mr. Burns was not representing the
interests of the Debtor.  In numerous pleadings, Mr. Burns claims he was representing the interests
of various parties, including the estate, an "SPE", Mr. Levin as agent in fact for the "SPE", Mr.
Levin as Debtor's agent in fact, and Mr. Levin as Debtor's attorney in fact, all against the interests
of the Debtor.  *See, e.g.*, Dkt. Nos. 130, 135, 140, 185, 187, and 354.

**C.  Mr. Burns Violated Numerous Ethical Rules**

67.    In *Torres v. Chang* (*In re Chang*), Case No. 11-10862-WIL, Adv. Pro. 13-00284,
2014 WL 4929062 (Bankr. D. Md., Sept. 30, 2014), this Court held that violations of the applicable
ethical rules may constitute a basis for a return of fees under Section 329.  *Torres*, 2014 WL 492062
at *4-*5.  Additionally, attorneys practicing before the Court are required to abide by the Maryland
Rules of Professional Conduct.  *Id.* at *5.

68.    An attorney owes a duty of loyalty to the client. This principal is expressed
repeatedly in the Maryland Attorneys' Rules of Professional Conduct ("MARPC").  Comment 1
to Rule 19-301.7 provides: "Loyalty and independent judgment are essential elements in the
attorney's relationship to a client."  *See Att'y Grievance Comm'n of Maryland v. Culberson*, 483
Md. 294, 317, 292 A.3d 274, 287 (2023).

***1. Mr. Burns Violated MARPC 19.301.5. Fees (1.5)***

69.    MARPC 19-301.5 provides, in pertinent part, that "[a]n attorney shall not
make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount
for expenses."

70.    Mr. Burns is seeking $139,045.12 in fees, but his legal work provided little benefit to the Debtor.  Mr. Burns did not achieve the Debtor's objectives in filing a chapter 13 bankruptcy case, both of the Debtor's properties have been sold, and a significant portion of his exempt retirement funds have been liquidated.  The Debtor's financial position is worse than if this case had been originally filed as a chapter 7 or if the Debtor never filed for bankruptcy at all because the Debtor would still have his exempt retirement funds.

71.    Not only did Mr. Burns not achieve the Debtor's objectives, but Mr. Burns is also seeking to charge the Debtor for time Mr. Burns spent representing entities other parties, real or fictitious, against the Debtor.  Mr. Burns repeatedly claimed he represented the bankruptcy estate, a special purpose entity or bankruptcy remote entry, and Ross Levin as agent or attorney in fact – all directly adverse to the Debtor.  *See, e.g.*, Dkt. Nos. 130, 135, 140, 185, 187, and 354.

### *2.  Mr. Burns Violated MARPC 19-301.1. Competence (1.1)*

72.    MARPC 19-301.1 provides that "[a]n attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  Mr. Burns failed to provide competent legal representation to the Debtor when he took positions directly opposed to the Debtor.  For example, when the Debtor was seeking to return to living in the Rockville Property, Mr. Burns took the position that the Confirmed Plan was "irrevocable" and that the Debtor irrevocably pledged the Rockville property for sale under the Confirmed Plan, and so advised his client.  *See, e.g.*, Dkt. Nos. 130 and 354.  This position is contrary to the Bankruptcy Code because a debtor's right to convert or dismiss a chapter 13 case cannot be waived.  11 U.S.C. § 1307 provides:

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.
(b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

11 U.S.C. § 1307.

While some courts have placed limitations on a debtor's absolute right to dismiss a chapter 13 case, Mr. Burns should have explained to the Debtor his options under Section 1307. The Debtor changed his mind about selling the Rockville Property after he was faced with involuntary discharge from the Manor Care assisted living facility where he resided. Such a significant change may have been sufficient to overcome claims of bad faith on behalf of the Debtor. However, instead of exploring options to achieve his client's objectives, Mr. Burns repeatedly told the Debtor, the Court, and third parties that the Debtor could not revoke the Confirmed Plan. *See, e.g*., Dkt. Nos. 130, 210, and 354. In addition, to convert or dismiss a chapter 13 case, a debtor also has the right to file a motion to modify a confirmed plan. 11 U.S.C. § 1329.

### *3. Mr. Burns Violated MARPC 19-301.16. (Declining or Terminating Representation (1.16)*

73.    Rule 19-301.16 provides, in pertinent part:

(a) Except as stated in section (c) of this Rule, an attorney shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the Maryland Attorneys' Rules of Professional Conduct or other law;
(2) the attorney's physical or mental condition materially impairs the attorney's ability to represent the client; or
(3) the attorney is discharged.

MARPC 19-301.6.

74.    Mr. Burns created a conflict between himself and the Debtor by taking steps to implement the chapter 13 plan, sell assets, hire professionals, and file pleadings without the Debtor's consent and even against the Debtor's express wishes.  Mr. Burns freely admits that he knew there would be a conflict with the Debtor.  Mr. Burns states:

> As stated above, there was always going to be a potential conflict with the Debtor and his Plan, which is exactly why the terms of the Plan were designed to disable that conflicting instinct and appoint an irrevocable third-party agent to carry out the terms of the Plan. When there was room in the Plan to accommodate any contrary wishes of Dr. Bevan such as in the untimely but consensual rehabilitation discussions for Laurel Property with his siblings back in February, 2023, undersigned counsel gladly deviated to meet the Debtor's wishes. Where there was no room in the Plan to allow for digression from the Plan, such as having Dr. Bevan move back into Rockville Property, counsel declined to assist the Debtor's wayward wishes.

Dkt. 210 at 6.

75.    Mr. Burns violated MARPC 19-301.16(a)(1) by failing to terminate his representation of the Debtor due to the conflict, which requires an attorney who has commenced representation of a client to withdraw if "the representation will result in violation of the Maryland Attorneys' Rules of Professional Conduct[.]"   MARPC 19-301.16(a)(1); *see also Attorney Grievance Comm'n v. Neverdon*, 473 Md. 631, 686, 251 A.3d 1157 (2021) (holding that an attorney's "continued representation, without withdrawal, of the Clients despite the conflict of interest, in violation of [Rule] 1.7, as the hearing judge concluded, constitutes a violation of [Rule] 1.16(a)(1).").

### 4. *Mr. Burns Violated MARPC Rule 19-301.2. Scope of Representation and Allocation of Authority Between Client and Attorney (1.2)*

76.    Rule 19-301.2(a) provides, in pertinent part:

[A]n attorney shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means

by which they are to be pursued. An attorney may take such action on behalf of the client as is impliedly authorized to carry out the representation. An attorney shall abide by a client's decision whether to settle a matter.

MARPC 19-301.2(a).

77.     MARPC 19-301.2(a) provides that "an attorney shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued." *See Att'y Grievance Comm'n of Maryland v. Framm*, 449 Md. 620, 646–47 (2016) (Finding a violation of Rule 19-301.2 when an attorney opposed client's answer in the guardianship case and took a position that was directly contrary to that of her client); *see also Attorney Grievance Comm'n v. Haley*, 443 Md. 657, 669, (2015) (concluding that the respondent violated MARPC 19-301.2(a) by seeking primary physical custody of his client's children despite the client's instruction for shared physical custody).

78.     Mr. Burns breached his duty of loyalty to the Debtor by filing pleadings directly opposing his client's position. *See, e.g.*, Dkt. Nos. 130, 131, 140, 145, 150, 151, 185, and 187.  A review of the pleadings filed by Mr. Burns after his relationship with the Debtor broke down, shows that not only did Mr. Burns file pleadings in direct opposition to his client, but he also filed pleadings on behalf of the Debtor which he was clearly not authorized to file.  For example, in the Motion To Enforce.  Dkt. No. 130, Mr. Burns states:


> This would not require a Motion requesting enforcement of the Plan and Confirmation but for the Debtor's overt actions taken over the past month to now interfere and impose his intentions on the actual construction at the Rockville Property.

Dkt. No. 130 at 7.

27. Nothing in the Plan is consistent with the foregoing aberrant behavior recently allegedly displayed by the Debtor. Thus:

28. the Debtor should NOT be interfering (much less with separate counsel from Legal Aid who is not disclosed on the docket herein) with the administration of this Chapter 13 Plan, particularly as to the sale of the Rockville Property on schedule and the ongoing wind up of final construction on site.

29. the Debtor should NOT be creating claims or causes of action from Manor Care that could constitute post-confirmation damages or claims that could interfere with the Plan administration and thereby derail the Plan full administration occurring timely.

30. the Debtor should NOT be agreeing and reneging on agreements with his siblings to vary from the Plan to first permit the Debtor a "Hail Mary Pass" as a last belated chance to retain the Laurel Property if the siblings and the Debtor want to proceed to restore and repair the Laurel Property so that the Debtor can have a second bite at the apple that was foregone to him, and then change his mind as happened today whereby the Debtor wants no restoration of the Laurel Property from his funds on hand. The Debtor and siblings will need to decide in the coming month or so what they want to do on the Laurel Property. Until that decision is reached, the Laurel Property will sit vacant with an increasing bio-hazard decay that would be a good research site for further pandemic studies by a foreign government.

Dkt. No. 130 at 11-12.

79.     Mr. Burns also violated MARPC 19-301.2 by interfering in the relationship between the Debtor and his attorney, Christina Moore.  After the Debtor retained Ms. Moore of the Maryland Legal Aid Bureau to represent him in the removal action by Manor Care, Mr. Burns without the Debtor's permission, proceeded to communicate with Ms. Moore and threaten her with contempt of court if she pursued the Debtor's plan to move from the assisted living facility to his home in Rockville.  Dkt. No. 150-1.  It is clear from the email sent by Mr. Burns to Ms. Moore, that the Debtor did not instruct Mr. Burns to threaten Ms. Moore regarding her representation of the Debtor because Mr. Burns's threats to Ms. Moore are indirectly opposed to the Debtor's expressed position.

### *5. Mr. Burns Violated MARPC Rule 19-301.7. Conflict Of Interest--General Rule (1.7).*

80.     MARPC 19-301.7 provides:

(a) Except as provided in section (b) of this Rule, an attorney shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the attorney's responsibilities to another client, a former client or a third person or by a personal interest of the attorney.
(b) Notwithstanding the existence of a conflict of interest under section (a) of this Rule, an attorney may represent a client if:
(1) the attorney reasonably believes that the attorney will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the attorney in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

MARPC 19-301.7.

81.     Mr. Burns violated MARPC 19-301.7 by claiming to represent the bankruptcy estate, a special purpose entity or bankruptcy remote entry, and Ross Levin as agent or attorney in fact, all directly adverse to the Debtor.  *See, e.g.*, Dkt. Nos. 130, 135, 140, 185, 187, and 354.

82.     Mr. Burns did not represent the bankruptcy estate and was not authorized to file any pleadings on behalf of the bankruptcy estate. Mr. Burns was not employed to represent the bankruptcy estate under 11 U.S.C. §327(e) by Timothy P. Branigan, the duly appointed chapter 13 trustee, who is the representative of the bankruptcy estate.

83.     When a debtor files for bankruptcy under chapter 13 of the Bankruptcy Code, the United States Trustee appoints a standing chapter 13 trustee to oversee the case. A standing trustee is considered an independent party, representing neither the debtor nor the government.  *See In re Modikhan*, 639 B.R. 792, 816 (Bankr. E.D.N.Y. 2022); *In re Soussis*, 624 B.R. 559, 575 (Bankr. E.D.N.Y. 2020), *aff'd sub nom. Soussis v. Macco*, 2022 WL 203751 (E.D.N.Y. Jan. 24, 2022)

(citing *Brandon v. Sherwood (In re Sann)*, 546 B.R. 850, 855 (Bankr. D. Mont. 2016)).  As such, it is a chapter 13 trustee's duty to represent the estate. *Id.*; *see also* U.S. Dep't of Just., Exec. Off. for U.S. Tr., *Handbook for Chapter 13 Standing Trustees* (2012) ("The standing trustee has a fiduciary responsibility to the bankruptcy estate").

84.    In *In re Ryan 1000, LLC*, 631 B.R. 722 (Bankr. E.D. Wis. 2021), the court explained the difference in attorneys duties for debtors in Chapter 7, 11, and 13:

> As the U.S. Trustee stresses, while Attorney Strouse is experienced in representing clients in consumer bankruptcy cases filed under Chapters 7 and 13 of the Code, he has never before filed a bankruptcy case on behalf of a Chapter 11 debtor. Chapter 11 is a very different animal from Chapters 7 and 13. For one, a Chapter 11 debtor-in-possession—and, by extension, the debtor's attorney—owe a fiduciary obligation to creditors. *See, e.g., In re Scott*, 172 F.3d 959, 967 (7th Cir. 1999) ("[t]he debtor-in-possession owes a fiduciary duty to his creditors"); *Raymond Pro. Grp.*, 421 B.R. at 903 ("Fiduciary duties also bind attorneys and other professionals employed by the debtor-in-possession."); cf. *In re Mack Industries*, 606 B.R. 313, 319–20 (Bankr. N.D. Ill. 2019) ("Neither chapter 7 debtors nor their counsel ... owe a fiduciary duty to the bankruptcy estate.... There is no equivalent to § 1107(a) for chapter 7 debtors."); *In re Gutierrez*, 309 B.R. 488, 499 (Bankr. W.D. Tex. 2004) ("[In a chapter 11 case,] the obligations on both the client and counsel are substantially different from those in the chapter 13 context. A debtor in a chapter 11 case takes on the fiduciary duties and responsibilities of a debtor-in-possession, a legal entity exercising most of the powers of a trustee. The chapter 13 debtor, though he or she remains in possession of property of the estate, and has the authority to use, sell, or lease that property, still does not assume anything approaching the breadth of trustee duties that a chapter 11 debtor-in-possession does.... The principal fiduciary duties [in a chapter 13 case] (collection of funds set aside pursuant to the plan for distribution to creditors, distribution of those funds, review of claims, monitoring debtor performance for the benefit of the creditor body) are placed not on the debtor at all, but on the chapter 13 trustee.").

*Id.* at 738.

85.    Mr. Burns claimed in several pleadings to represent a special purpose entity or bankruptcy remote entity and Ross Levin as the "SPE agent in fact" or Debtor's attorney in fact. *See, e.g.,* Dkt. Nos. 171, 185, 187, 192, 210, and 354.  In the Motion to Reenter (Dkt. No. 155), Mr. Burns claims that Mr. Levin had the power to overrule the Debtor:

> This Plan and the Confirmation Order involve a SPE; namely, Mr. Levin as a remote bankruptcy entry to sever the Debtor's capacity and agency to make any direction which is contrary to the Plan and Confirmation Order or actions taken thereby under. The Bankruptcy Court thereby inferentially resolved that any and all contrary directions and demands and contentions made heretofore by the Debtor are without a good faith factual or legal basis.

Dkt. No. 155, ¶ 3.

86.    Mr. Burns also claimed that the Debtor was not the real party in interest and Mr. Levin had the right to bring suit in his own name:

> In an SPE Plan, the Debtor is not the "real party in interest" post-confirmation as to matters contradicting the Plan, or the Confirmation Order, but rather the bankruptcy remote entity Mr. Levin is as agent in fact. *See* also, Fed. R. Civ. P. 17(a)(1).

Dkt. No. 155 at 3 n.2.

87.    The Confirmed Plan did not create a separate legal entity that Mr. Burns could represent in opposition to the Debtor. Because chapter 13 is specifically reserved for individuals with regular income, a special purpose entity cannot be a chapter 13 debtor or replace the debtor as the real party in interest in a chapter 13 case. 11 U.S.C. § 109(e). Even if such an entity could exist in a chapter 13 case, it would be a conflict of interest for Mr. Burns to represent the entity against his client.

88.    A "special purpose entity" or "remote bankruptcy entity" is not an entity that can act in place of the Debtor. The court in *In re Drs. Hosp. of Hyde Park, Inc.*, 507 B.R. 558 (Bankr. N.D. Ill. 2013), described "special purpose entities" and "bankruptcy remote entities" as follows:

> Although a "bankruptcy remote entity" is not defined in the Bankruptcy Code, it is recognized in the business world and literature as a structure designed to hold a defined group of assets and to protect those assets from being administered as property of a bankruptcy estate in event of a bankruptcy filing. Comm. Bankr.& Corp. Reorganization of Ass'n of Bar of N.Y.C., Structured Financing Techniques, 50 Bus. Law. 527, 528–29 (1995). A form of structured financing, the idea is to separate the credit quality of identified assets upon which financing is based from the credit and bankruptcy risks of any entity involved in the financing [ ]. To

- 25 -

function properly, the entity must be legally separate from all related entities so that its property can be distinguished from property of a bankruptcy estate as defined in the Code in 11 U.S.C. § 541. The entity, if actually created, is a type of special purpose vehicle that holds the isolated assets being financed [ ]. Id. at 109–110.

There are a few general requirements for creating a bankruptcy remote entity. First, the transfer of assets that are the basis of the financing must be a "true sale," as opposed to a transfer of assets that serve as collateral for a loan [ ]. This transfer should be structured so that the originator retains no legal or equitable interests in the assets following transfer [ ]. Second, the activities and relationship with the originator should be structured so that the special purpose vehicle's assets should not appear to be among assets of the originator and therefore relied on by creditors in event of the originator's bankruptcy [ ]. Id. at 110.

89.    No special purpose entity exists in this case.  Neither the Confirmed Plan nor the Confirmation Order mention a special purpose entity or remote bankruptcy entity, and there was no transfer or sale of any of the Debtor's assets to any such entity.  A special purpose entity or bankruptcy remote entity is designed to shield assets from being administered in bankruptcy, the opposite of what Mr. Burns is claiming in this case.

90.    Not only did a special purpose entity not exist, but the Debtor did not grant Mr. Levin the powers claimed by Mr. Burns.  Mr. Levin was appointed as the Debtor's attorney in fact for the limited purposes of selling the two parcels of real property and disbursing funds for specific purposes. With respect to Mr. Levin the Confirmed Plan provides:

The contemplated sale of both the Rockville Property and the Laurel Property described above shall be made by Ross Levin of Homewise Realty Services, LLC pursuant to his approved listing agreements for both properties as approved by the Bankruptcy Court. This Plan by agreement of the Debtor and any order confirming same shall compel the sale of both the Rockville Property and the Laurel Property by and through Mr. Levin pursuant to his approved listing agreements, and Mr. Levin shall have authority as attorney in fact by consent of the Debtor hereto to sign all required documents incidental to sale including, but not limited to, a contract for sale, deed and closing settlement statement and any corrective documents which may be required in the transactions. Mr. Levin may assign this duty to one of his agents but is ultimately responsible for supervision of the transactions and his duty to conclude the transactions completely.

Dkt. No. 55 at 9.

The Order Confirming Plan further provides that:

> ORDERED, that the property of the estate shall not vest in the Debtor(s) until the Debtor(s) is/are granted a discharge or this case is dismissed or otherwise terminated following funding of the transactions contemplated in ¶ 9 and it is further decreed that pursuant to ¶ 9 of the Plan, Adam Ross Levin is appointed as agent in fact and attorney in fact for the Debtor to take all reasonable and appropriate actions to restore the Rockville Property and the Laurel Property to saleable condition including removal and disposal by sale if feasible on expedited motion/notice or if infeasible disposal on expedited motion/notice of any or all on site personal property including any vehicle(s) stored on site that impedes the restoration and/or sale of the foregoing real properties and to transfer funds from depository accounts including any retirement account(s) as required to fund the Plan (with the prior approval in writing by the Debtor's counsel) and to further pursue as the real estate broker of record the listing agreements to contracts of sale and to fund the Plan; and it is further[.]

Dkt. No. 80 at 1.

91.    First, there is no document which provides Mr. Levin with the authority to direct a special purpose entity, direct the entire chapter 13 case, make all decisions regarding plan implementation, make legal decisions for the Debtor, or litigate in his own capacity. The scope of Mr. Levin's authority is clearly defined, and he cannot enlarge the actual authority granted by the Debtor. *See P. Flanigan & Sons, Inc. v. Childs*, 251 Md. 646, 654 (1968).

92.    Second, the main duty of an agent is loyalty to the interest of his principal. *See Nagel v. Todd*, 185 Md. 512, 516–17, 45 (1946) (*quoting DeCrette v. Mohler*, 147 Md. 108, 115, (1925)); Restatement, *supra*, § 39 ("Unless otherwise agreed, authority to act as agent includes only authority to act for the benefit of the principal."); *id*. § 387 ("Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency."). Thus, in exercising granted powers under a power of attorney, the attorney in fact is bound to act for the benefit of his principal and must avoid where possible that which is detrimental unless expressly authorized. *See Matter of Rolater's Est.*, 542 P.2d 219, 22*3; King v. Bankerd*, 303 Md. 98, 108, 492 A.2d 608, 613 (1985).

- 27 -

93.    Mr. Burns's claims of representing a special purpose entity directed by Mr. Levin created a conflict of interest because such representation was directly adverse to the Debtor and violates MARPC 19-301.7.

94.    Mr. Burns also claimed in pleadings to represent the bankruptcy estate.  Mr. Burns was retained to represent the Debtor.  *See* Dkt. No. 354-2.  the Debtor as a chapter 13 debtor does not represent the estate.  The Debtor is neither a trustee nor one on whom the Bankruptcy Code imposes the functions and duties of a trustee.  A chapter 13 debtor, unlike debtors under chapters 11 and 12, is not charged with "perform[ing] all the functions and duties ... of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a); *see also* 11 U.S.C. § 1203 ("a debtor in possession ... shall perform all the functions and duties ... of a trustee serving in a case under chapter 11").

95.    Instead, a chapter 13 debtor and the chapter 13 trustee exercise concurrent authority over estate property, with the exception that the debtor has exclusive authority to use, sell, or lease estate property under § 363.  11 U.S.C. § 1303.  A chapter 13 debtor is not required to perform the functions or duties of a trustee, unless engaged in business, in which case the debtor must perform the trustee's duties to provide periodic operating reports under § 704(a)(8). *See* 11 U.S.C. § 1304(c).

96.    Mr. Burns was not retained to represent the bankruptcy estate by the Chapter 13 Trustee under 11 U.S.C. § 327.   "Because section 327 addresses the retention of professionals by a trustee, it does not by its terms apply to the retention of professionals by a debtor that is not a debtor in possession.  Thus, a debtor in a case under chapter 7 or chapter 13 does not need court approval before retaining counsel."  3 Collier on Bankruptcy ¶ 327.01 at 327–5 (16th ed. 2017). In addition, a majority of courts have concluded that a chapter 13 debtor is not required to file an application to employ counsel under 11 U.S.C. § 327 because the chapter 13 debtor does not

perform the duties of a chapter 13 trustee or a debtor in possession. *See In re Jones,* 505 B.R. 229, 233 (Bankr. E.D.Wisc. 2014) (no requirement for employment of special counsel by Chapter 13 debtor); *In re Powell*, 314 B.R. 567, 569–70 (Bankr.N.D.Tex.2004) (Chapter 13 does not decree that a Chapter 13 debtor has the rights or performs the functions or duties of a trustee."); *In re Scott*, 531 B.R. 640, 645 (Bankr. N.D. Miss. 2015); *In re Olick*, 565 B.R. 767, 789 (Bankr. E.D.Pa. 2017) ("Indeed, in every-day practice in the bankruptcy courts, no one expects chapter 13 debtors to request court appointment of their bankruptcy counsel and debtors never do so."); *In re Demeza*, 582 B.R. 868, 875 (Bankr. M.D. Pa. 2018); *In re Gutierrez*, 309 B.R. 488, 501 (Bankr. W.D.Tex. 2004); *In re Young*, 285 B.R. 168, 170 (Bankr. D.Md. 2002).

### 6. Mr. Burns Violated MARPC Rule 19-301.6. Confidentiality of Information (1.6)

97.     MARPC 19-301.6(a) states, "[a]n attorney shall not reveal information relating to representation of a client unless the client gives informed consent [and] the disclosure is impliedly authorized in order to carry out the representation[.]"  Only the client has the power to waive the attorney-client privilege. *Newman v. State*, 384 Md. 285 (2004).

98.     Even in situations where confidential information must be revealed to a court, the attorney is obligated to limit revelations to protect the client.  "If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the attorney to the fullest extent practicable."  Comment 6 to MARPC 19-301.6.

99.     Mr. Burns indiscriminately revealed confidential information related to his representation of the Debtor in pleadings and attachments to pleading filed with the Court and

made no attempt to limit his disclosures. *See* Dkt. Nos. 130, 131, 140, 150, 151, 155, 160, 171, 185, and 187.

100.    The  Supreme Court of Maryland has found that disclosing client information and communications in court filings is a violation of MARPC 19-301.6. *See Att'y Grievance Comm'n of Maryland v. Powers*, 454 Md. 79, 94, 164 A.3d 138, 147 (2017) ("Respondent violated the sacred and well-embedded concept embodied by Rule 19-301.6 by disclosing information that Respondent obtained by way of his representation of Mr. Braun in the Golden Goal litigation. He disclosed this information in a public forum, *i.e.*, in a lawsuit brought in federal court, in order to recoup money that he believed Mr. Braun owed him."); *see also Att'y Grievance Comm'n of Maryland v. Smith-Scott*, 469 Md. 281, 348, 230 A.3d 30, 69 (2020) (The Supreme Court of Maryland agreed that "Ms. Smith-Scott violated Rule 19-301.6 when she intentionally attached, as exhibits, confidential email communications exchanged with Ms. Saunders in a motion filed with the Bankruptcy Court. Ms. Smith-Scott neither attempted to obtain Ms. Saunders' permission to disclose these confidential communications nor take any preventative measures to limit the disclosure, such as filing the motion under seal.").

### *7. Mr. Burns Violated MARPC Rule 19-301.9. Duties To Former Clients (1.9)*

101.    MARPC 19-301.9 provides:

(a) An attorney who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
(b) An attorney shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the attorney formerly was associated had previously represented a client:
(1) whose interests are materially adverse to that person; and
(2) about whom the attorney had acquired information protected by Rules 19-301.6 (1.6) and 19-301.9 (c) (1.9) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

MARPC 19-301.9.

102.    Mr. Burns violated MARPC 19-301.9 by revealing information relating to his representation of the Debtor and using that information to the Debtor's disadvantage after his representation terminated.  After the Court entered the Order striking Mr. Burns's appearance as attorney for the Debtor, Mr. Burns filed numerous pleadings revealing confidential information relating to his representation of the Debtor and using that information against the Debtor.  *See e.g.*, Dkt. Nos. 210, 297, 354 and 362.

### 8. Mr. Burns Violated MARPC Rule 19-308.4. Misconduct (8.4)

103.    MARPC 19-308.4 provides, in pertinent part, that "[i]t is professional misconduct for an attorney to (a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another[.]"

104.    By violating MARPC 1.2, 1.5, 1.6, 1.7, and 1.16, Ms. Burns also necessarily violated Rule 8.4(a).  *See Att'y Grievance Comm'n of Maryland v. Framm*, 449 Md. 620, 664, 144 A.3d 827, 853 (2016) ("We have held that, when an attorney violates a rule of professional conduct, the attorney also violates [Rule] 8.4(a)." (quoting *Attorney Grievance Comm'n v. Young*, 445 Md. 93, 106, 124 A.3d 210 (2015))).

## CONCLUSION

While it is evident from the docket that Mr. Bevin has been an extremely difficult chapter 13 debtor, the Debtor's conduct does not allow Mr. Burns to gratuitously abuse his client or former client in a public forum.  Even difficult clients are entitled to the protections of the ethical rules.

For the reasons stated above, the Court should deny Mr. Burns's application for compensation and require Mr. Burns to  refund to Debtor or the Chapter 7 Trustee all monies Debtor has paid to him.

Date: November 30, 2023                    Gerard R. Vetter
                                           Acting United States Trustee for Region 4
                                           By Counsel

                                           */s/ L. Jeanette Rice*
                                           L. Jeanette Rice, Bar No. 12933
                                           Assistant U.S. Trustee
                                           6305 Lane, Suite 600
                                           Greenbelt, Maryland 20770
                                           (301) 344-6216
                                           Fax: (301) 344-8431
                                           E-mail: Jeanette.Rice@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2023, I reviewed the Court's CM/ECF

system and it reports that an electronic copy of the Objection will be served electronically

by the Court's CM/ECF system on the following:

Anthony Joseph DiPaula - ajdipaula@dipaulalaw.com,cevans@dipaulalaw.com

Daniel J. Pesachowitz - dpesacho@siwpc.com,rjones@siwpc.com,
bkreferrals@siwpc.com,siwbkecf@siwpc.com,siwpc@ecf.courtdrive.com,
siwattecf@siwpc.com

Dorothy Carol Sasser - dsasser@siwpc.com,bkreferrals@siwpc.com,
siwbkecf@siwpc.com, siwpc@ecf.courtdrive.com, siwattecf@siwpc.com

Janet M. Nesse - jnesse@mhlawyers.com,DC0N@ecfcbis.com,
jmnesse@ecf.axosfs.com,jfasano@mhlawyers.com,cpalik@mhlawyers.com,tmackey@m
hlawyers.com,Nesse.JanetR92003@notify.bestcase.com

John D. Burns - info@burnsbankruptcyfirm.com,burnslaw3@gmail.com,
burnslaw6@gmail.com,notices@nextchapterbk.com,pacerecfemails@gmail.com,2634@
notices.nextchapterbk.com

Justin Philip Fasano - jfasano@mhlawyers.com,jfasano@ecf.courtdrive.com,
dmoorehead@mhlawyers.com,tmackey@mhlawyers.com,hleaphart@mhlawyers.com,mt
aylor@mhlawyers.com,Fasano.JustinR92003@notify.bestcase.com

Leah Christina Freedman - bankruptcy@bww-law.com,leah.freedman@bww-law.com

M. Evan Meyers - bdept@mrrlaw.net

Nicole C. Kenworthy - bdept@mrrlaw.net

William Frederick Steinwedel - wsteinwedel@mdlab.org, roithamer21988@gmail.com, G21117@notify.cincompass.com

William Mark Rudow - williamrudow@rudowlaw.com

I hereby further certify that on November 30, 2023, a copy of the Objection was also mailed first class mail, postage prepaid to:

William C. Bevan, Jr.
11901 Georgia Ave
Wheaton, MD 20902

Ingrid Bevan
409 N. Main St.
Mt. Airy, MD 21771

Ingrid Bevan
140 Bond St.
Westminster, MD 21157

Matthew Eric Bevan
Law Offices of Anthony J. DiPaula P.A.
34 S. Main Street
Bel Air, MD 21014

/s/ *L. Jeanette Rice*
L. Jeanette Rice