IN THE UNITED STATES BANKRUPTCY COURT
**FOR THE DISTRICT OF MARYLAND (Greenbelt)**

| | | |
|---|---|---|
| IN RE: | * | |
| | * | Case No.: 22-12609-LSS |
| WILLIAM C. BEVAN, JR., | * | |
| | * | |
| Debtor. | * | Chapter 7 |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RE CONTRACT ENFORECEABILITY SUPPORTING OPPOSITION TO OBJECTION TO PROOF OF CLAIM #19-6 (MANOR CARE OF WHEATON MD, LLC)

Creditor, Manor Care of Wheaton MD, LLC ("Creditor"), by William M. Rudow, Esquire and the Rudow Law Group, LLC, submits this Memorandum re Contract Enforceability Supporting Objection to Proof of Claim #19-6 ("Memo") as requested by the Court in that Order Setting Briefing Schedule, signed June 13, 2025 [Dkt. No. 589] in the above-captioned matter and states:

This Memo addresses *whether or not the Respondent Claim 19 Exhibit 4 unsigned contract was accepted/enforceable under Maryland law* -it is accepted and enforceable. To determine if the Respondent Claim 19 Exhibit 4 unsigned contract was accepted/enforceable under Maryland law, the Court will need to apply the facts as admitted in that evidentiary hearing ("Hearing")[1] to Maryland law.

---

[1] On June 10, 2025, the Court conducted a hearing regarding, inter alia, that Objection to Proof of Claim #19-6 (Manor Care of Wheaton MD, LLC) [Dkt. No. 542] and the opposition thereto [Dkt. No. 560]; see that Notice [Dkt. No. 577].

## I. Facts

The following facts were admitted into evidence during the Hearing.

1. Respondent Claim 19 Exhibit 4 [Dkt. No. 584-4] ("Contract"), commonly referred to as the *resident contract* or *admission contract* was admitted into evidence.

2. The Contract, as required by Md. Code Regs. 10.07.09.06 and approved by the State of Maryland, was intended to define the relationship between the Creditor and the Debtor for services rendered by the Creditor, a skilled nursing and rehabilitation facility.

3. Respondent Claim 19 Exhibit 5 [Dkt. No. 582-5] POC 19 5th amended was admitted into evidence ("POC").

4. Respondent Claim 19 Exhibit 8 [Dkt. No. 584-1] correcting the accounting was admitted into evidence ("Accounting").

5. Respondent Claim 19 Exhibit 9 [Dkt. No. 584-2] detailing the corrected accounting was admitted into evidence ("Detailed Accounting").

6. The Court admitted testimony from fact witness Creditor Administrator Ronnie Colbert ("Administrator").

7. The Court admitted testimony from fact witness Creditor employee Devorah Gordon, of the home office in Brooklyn New York ("Gordon").

8. Testimony from the Administrator and Gordon, and Respondent Claim 19 Exhibit 5, Respondent Claim 19 Exhibit 8 and Respondent Claim 19 Exhibit 9

confirmed that the Debtor was a resident of the Creditor from 8-31-22 – 2-22-25 ("Time Frame").

9.  The Administrator testified that the Debtor was in an acute care facility that transferred him to the Creditor.

10. The Administrator testified that the custom and practice in the industry was to have the form resident admission contract executed after the resident was settled in at the facility.

11. The Administrator testified that the Creditor never sent an agent to the acute care facility prior to resident admission to obtain an executed Contract.

12. Upon cross-examination, the Administrator testified that the Creditor could have sent an agent to the acute care facility prior to the resident admission to obtain an executed resident contract, but that was impractical, never done in the industry, and that the residents often arrived after hours and were allowed to settle in with the admission contract being presented the next day.   No testimony was given as to the time the Debtor was dropped off at the facility by an ambulance.

13. The Administrator testified that the Debtor arrived by ambulance.

14. The Administrator testified that he personally spoke with the Debtor many times requesting Contract execution, but that the Debtor refused to sign the Contract.

15. The Administrator testified that he personally, and his staff, handed the Debtor copies of the Contract many times, requesting that the Debtor sign the Contract.

16. The Administrator testified that in one instance, the Debtor took at a copy of the Contract and requested time for his attorney to review the Contract.

17. The Administrator testified that the Debtor never actually signed the Contract.

18. The Administrator and Gordon testified that the Debtor benefited from the Creditor's facility, accepting and using the Creditor's services during the Time Frame.

19. The Administrator testified that the Contract was pre-approved by the State of Maryland.[2]

20. The Administrator testified that, short of going to the acute care facility prior to the resident being transferred to the Creditor's facility, once the resident was in transit by ambulance, Maryland law prevented the Creditor from refusing to accept the resident or involuntarily discharging the resident without complying with the Contract or Maryland law.

21. The Movant did not admit any testimony or evidence.

22. No evidence was admitted regarding the Debtor's refusal to accept any specific term in the Contract or refusal to accept the Contract, only that he refused to sign the Contract each time that it was presented.[3]

---

[2] Md. Code Regs. 10.07.09.06 - Admission Contract Required A. Before or upon admission, a nursing facility and applicant or, when applicable, the applicant's agent, shall execute an **admission contract which has been approved by the Department**.

23. None of the testimony or evidence was rebutted by the Movant who presented no witnesses or evidence.

## II.  Law

Based on Fed. R. Bankr. P. 3001(f), the Movant has the burden of proving that the Debtor rejected the Contract and that the Contract is unenforceable.

The Maryland Code of Regulations ("COMAR") Chapter 10.07, et al governs the relationship between Facilities like the Creditor and residents like the Debtor. This statute contains a panoply of requirements from physical plant plumbing[4] to the resident's bill of rights,[5] which are prescribed in MD Code, Health - General, Title 19 Health Care Facilities Subtitle 3-Hospitals and Related Institutions Part VI. Rights of Individuals.[6]  MD Code, Health - General, § 19-344 Admission requirements, rights of residents is quite extensive regarding many issues about admission requirements, but nowhere in COMAR or MD Code, Health - General, Title 19 is there a provision regarding patient refusal to sign a resident admission contract, pre-approved by the State of Maryland.

---

[3] Technically, one time the Debtor did not refuse to sign the Contract but stated that he wanted to speak to his attorney first.

[4] Nursing Homes (§ 10.07.02.01 to 10.07.02.80)

[5] Md. Code Regs. tit. 10, pt. 1, subtit. 07, ch. 10.07.09 - Residents' Bill of Rights: Comprehensive Care Facilities and Extended Care Facilities   § 10.07.09.09 - Implementation of Residents' Bill of Rights.

[6] Specifically see § 19–343 Basic Rights of Patients in Comprehensive Care or Extended Care Facilities.

The Administrator testified that the Creditor could not legally simply throw the Debtor out of the facility for having failed to sign the Contract without complying with Maryland law.  Md. Code Regs. 10.07.09.06 - Admission Contract Required covers how admission contracts should be managed by facilities like the Creditor, such as explaining certain portions, and requires the facility to use pre-approved language.[7]

## III.    Argument

The unsigned Contract was accepted/enforceable under Maryland law for the following three (3) independent reasons:  contract formation by conduct and/or acceptance by performance; ratification; and/or detrimental reliance aka promissory estoppel.[8]  In plain English, the Debtor's actions show that he accepted the Contract and all of its terms even if he did not sign a piece of paper.

### 1.1 Contract Formation by Conduct and/or Acceptance by Performance

Under Maryland law, a contract may be formed by conduct or acceptance by performance, even if no written agreement is signed, so long as the essential elements of contract formation are met. Courts look at the objective manifestations of assent by the parties. The key elements of a contract in Maryland are:

1. a certain and definite offer;

---

[7] Md. Code Regs. 10.07.09.06 - Admission Contract Required A. Before or upon admission, a nursing facility and applicant or, when applicable, the applicant's agent, shall execute an **admission contract which has been approved by the Department**.
[8] Not equitable estoppel, which is very different from promissory estoppel.

2. acceptance, which may be by acts;[9]
3. consideration; and
4. mutual assent, acceptance is a demonstration that the parties had a meeting of minds or mutual assent.[10,11]

The Contract need not be signed.  In Porter v. Gen. Boiler Casing Co., 284 Md. 402, at 410 - 411 396 A.2d 1090 (1979) the Maryland Supreme Court held:

> The trial judge referred to the fact that there was no signature on a contract between General and the union. **It should be noted that a signature is not required in order to bring a contract into existence,** *HN4* **nor is a signature always necessary to the execution of a written contract**. The purpose of a signature is to demonstrate "mutuality or assent" **which could as well be shown by the conduct [\*\*\*17] of the parties**. 17 C.J.S. *Contracts* § 62 at 732 (1963). "So far as the common law is concerned, the making of a valid contract requires no writing whatever; and even if there is a writing, there need be no **[\*411]** signatures unless the parties have made them necessary at the time they expressed their assent and as a condition modifying that assent." 1 A. Corbin, *Contracts* § 31 at 114 (1963).

Each element of contract formation by conduct and/or acceptance by performance under Maryland law is satisfied based on the facts presented at the evidentiary hearing on June 10, 2025.

1. Definite Offer:  The Creditor presented the Debtor the written admission Contract pre-approved by the State of Maryland, as required by COMAR 10.07.09.06, detailing the terms of residency and care many times. This constituted a definite offer to provide skilled nursing and rehabilitative services.

---

[9] Cochran v. Norkunas, 398 Md. 1 at 34, 919 A.2d 700 (2007) *Acceptance may be manifested by acts as well as by words.*  And see Porter v. Gen. Boiler Casing Co., 284 Md. 402, at 409 396 A.2d 1090 (1979) - *Acceptance can be accomplished by acts as well as words; no formal acceptance is required.*
[10] Cochran v. Norkunas, 398 Md. 1 at 34, 919 A.2d 700 (2007).
[11] Buffalo Pressed Steel Co. v. Kirwan, 138 Md. 60, at 64 113 A. 628 (1921).

2. Acceptance by Conduct:  The Debtor lived at the facility for almost thirty (30) months, accepting healthcare services. The Debtor took copies of the Contract and once requested time to consult with his attorney—indicating awareness and acknowledgment of the terms. These actions reflect acceptance by conduct.

3. Consideration:  The Creditor provided continuous skilled nursing care and housing to the Debtor from August 31, 2022 to February 22, 2025. The Debtor received valuable services, establishing consideration through performance.

4. Mutual Assent:  Acceptance is a demonstration that the parties had a meeting of minds or mutual assent.  The Creditor presented the same written terms in the Contract repeatedly to the Debtor, and the Debtor continued to accept services without objection for almost thirty (30) months. The Debtor clearly assented to the terms of the Contract. The Debtor's failure to leave, is another demonstration of his meeting of mind or assent to the Contract.  At the Hearing, the Debtor presented no evidence that he either did not:  agree to the Contract; assent to the Contract; or accept services rendered by the Creditor under the Contract, despite it being his burden of proof on this issue.

All required elements of contract formation by conduct and/or acceptance by performance are satisfied. The offer was clear, the Debtor accepted by remaining and benefiting from services, consideration was provided, and mutual assent was evident through the conduct of both parties. Written contracts need not be signed. They just need to be assented to.  The Debtor's conduct clearly demonstrates his

assent to the terms of the Contract.  Under Maryland law, the unsigned Contract is enforceable.  The mutual assent is clear.  The facility expected to provide services identified in the Contract as required under Maryland law – and the admissible evidence shows that it did so.  The Debtor expected the Creditor to provide the services identified in the Contract as required under Maryland law as he received the services for about thirty (30) months and provided no admissible evidence – or otherwise – that he objected to any terms in the Contract.

Equity and justice demand that the Court specifically enforce the Contract. Goszka v. Kleis, 163 Md. 167, at 170, 161 A. 170 (1932) offers a good explanation of how *under such circumstances, a court of equity would disregard the plainest requirements of justice and ignore a situation replete with equity if it should refuse specific performance on the ground of the incompleteness of the agreement.*[12]

The Court should consider the following equitable considerations in determining that the Contract is enforceable.  It is unrealistic to expect an employee

---

[12] See Goszka v. Kleis, 163 Md. 167, at 170, 161 A. 170 (1932) holding:

It is true that the contract was certainly signed by but one of the tenants in common, and not by his wife, who is named in the body of the instrument as one of its parties. The contract, however, was accepted by the other parties in its incomplete form, and partly performed by the party signing, and the defendants have received and enjoy the benefits of this performance, and, under such circumstances, a court of equity would disregard the plainest requirements of justice and ignore a situation replete with equity if it should refuse specific performance on the ground of the incompleteness of the agreement. *Pomeroy on Specific Performance* (3rd Ed.), sec. 145.

The contract, therefore, will be enforced as that of the parties who [***5] signed, and Walter Goszka, at least, was bound by all its stipulations. …

of the Creditor to travel to each hospital or acute care facility prior to admitting a resident. Not only would the logistics be expensive and impractical but doing so would harm the residents. Becoming a resident of a facility like the Creditor is moving into a new home. Common decency and professionalism require the facility be warm and welcoming. Allowing residents to settle in before requiring them to sign a State approved contract that they have to sign meets these standards. This is how this system is set up and the standard in the industry from the tenor of the Administrator's testimony.

Residents in a facility like the Creditor's facility need very specific lifesaving care as well as rules to live by; these are provided under Maryland law and expressly incorporated into the terms of the Contract. Facilities like the Creditor have many rules that they must comply with to provide for the health safety and welfare of multiple residents living under the same roof; these are prescribed by Maryland law and expressly incorporated into the terms of the Contract.

Thus, the terms of the Contract are requirements and neither the resident nor the facility[13] can pick and choose. So, each of the following elements must be viewed in this light. The definite offer is a contract for a resident to live in Creditor's facility under the rules and terms in the Contract as required by Maryland law - period. The mutual assent by conduct is of all of the rules and

---

[13] [13] Md. Code Regs. 10.07.09.06 - Admission Contract Required A. requires the facility to have the form Contract executed.

terms in the Contract as required by Maryland law – period.  Consideration and acceptance are simply not in issue.  Once a contract is formed, all the terms and conditions become enforceable.

In sum, it is not disputed that the Creditor provided services to the Debtor and the Debtor accepted these services.  The Debtor knew[14] that his stay in the Creditor's facility was governed by the terms in the Contract and chose to avail himself of these benefits by living in the facility for a significant time.

### 2.1  Ratification

Contract ratification in Maryland is defined in case law.  Ehrlich v. Md. State Emples. Union, 382 Md. 597, at 608 – 609, 856 A.2d 669 (2004) notes several similar definitions in BLACK'S LAW DICTIONARY 1268-69 (7th ed. 1999) and RESTATEMENT (SECOND) OF AGENCY § 82 (1958).:

> The question arises, then, of what is required for ratification. The term is neither defined nor described in the statute, but, because the term can be construed in a number of ways, depending on the context of its use, we need to focus on what the Legislature likely intended.
>
> Black's Law Dictionary gives two definitions of the term, one generic and one with particular reference to contracts:
>
>> "1. Confirmation and acceptance of a previous act, thereby making the act valid from the moment it was done < the board of directors' ratification of the president's resolution >.2. *Contracts*. A person's binding adoption of an act already completed but either not done in a way that originally produced a legal obligation or done by a third party having at the time no authority to act as the person's agent

---

[14] The Debtor had an opportunity to dispute his knowledge of the terms of the Contract or disagreement with any at the Hearing, but did not do so as was his burden of proof.

< an adult's ratification of a contract signed during childhood is necessary to make the contract enforceable >."

BLACK'S LAW DICTIONARY 1268-69 (7th ed. 1999).

...

The Restatement Second of Agency is generally [***18] in accord. It defines ratification as "the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." RESTATEMENT (SECOND) OF AGENCY § 82 (1958). Although in some instances, ratification may be done expressly or by implication and may be achieved orally, in writing, or even by [*609] mere acquiescence, in other instances more formality is required.

This is summarized as affirmation of the contract by acts of the parties.[15]

Ratification also requires the confirmation and acceptance of a prior act, making it valid from the moment it was performed. This concept requires the principal to have full knowledge of all material facts and the law, and the act of ratification must be independent, substantive, and made with complete freedom of volition.[16]

---

[15] See also Snider Bros., Inc. v. Heft, 271 Md. 409, at 414 317 A.2d 848 (1974) holding that *[n]ormally a person cannot be held liable under a contract to which he was not a party. Crane Etc. Co. v. Terminal Etc. Co., 147 Md. 588, 593, 128 A. 280 (1925). However, a person not originally a party to a contract may later accept or adopt it, and he will then be bound by it. Citations omitted.* And see Porter v. Gen. Boiler Casing Co., 284 Md. 402, 396 A.2d 1090 (1979) holding that:

The **general** rule is that one cannot be held to a contract to which he is not a party. *Snider Bros., Inc. v. Heft,* 271 Md. 409, 414, 317 A. 2d 848 (1974), and *Crane etc. Co. v. Terminal etc. Co.,* 147 Md. 588, 593, 128 A. 280 (1925). However, a party may later accept or adopt a contract and thus be bound by it. *Snider* at 414 and *Stavrou v. Beacon Supply,* 249 Md. 451, 456, 240 A. 2d 278 (1968). Thus, what constitutes acceptance becomes the threshhold question. **Acceptance can be accomplished by acts as well as words; no formal acceptance is required.** (emphasis added)

[16] See McLean v. Maloy, 136 Md. 467, at 514, 111 A. 91 (1920).

Ratification requires the principal to be fully aware of all material circumstances, the real value of the contract.[17]  Ratification rests on the principle of public policy, requiring the party to have one fair opportunity, with full knowledge of the facts and rights, to decide whether to affirm or disaffirm the contract and that justice or equity requires for the relief of the party having such cause to impeach the contract.[18]

When a contract is ratified the terms of a contract, once ratified, are binding and enforceable as agreed upon by the parties.[19]

Under Maryland law, Debtor ratified the unsigned Contract through his knowing acceptance of benefits and conduct while residing at the Creditor's facility from August 31, 2022 to February 22, 2025.  The evidentiary record satisfies all elements of ratification:

---

[17] See Cumberland Coal & Iron Co. v. Sherman, 20 Md. 117 at 134 (1863).

[18] See Munich Re-Insurance Co. v. United Sur. Co., 113 Md. 200, at 218 77 A. 579 (1910) holding:

> In the article on Cancellation of **[\*\*586]** Instruments by Mr. John Norton Pomeroy, 2nd, in 6 *Cyc.,* that learned author, on page 297, has embodied in the text a quotation from JUDGE CHOATE in *7 F. 401,* where, in speaking of the effect of *HN1* ratification, it is said: "This doctrine seems to rest not upon the principle **[\*\*\*29]** of a new contract between the parties, nor yet upon the ordinary principle of estoppel *in pais,* **but rather upon a distinct principle of public policy, that all that justice or equity requires for the relief of a party having such cause to impeach a contract is that he should have but one fair opportunity, after full knowledge of the rights, to decide whether he will affirm and take the benefits of the contract or disaffirm it and demand the consequent redress**.  (emphasis added)

[19] See White v. Simard, 152 Md. App. 229, at 244, 831 A.2d 517 (2003) in the context of a foreclosure sale bid ratified by the Court in which all the terms of the contract – in the advertisement – are enforceable.

> These terms of sale become part of the contract that is made when the sale is ratified. *See, e.g., Donald v. Chaney, 302 Md. 465, 477-78, 488 A.2d 971 (1985)*(in foreclosure sale, terms of sale contained in advertisement of sale became binding and **[\*\*\*17]** enforceable upon ratification).

1. Knowledge of Material Terms:    The Administrator testified that the Contract was presented to the Debtor multiple times, and in one instance the Debtor expressly asked for time to have it reviewed by his attorney. This confirms the Debtor had knowledge of its contents and legal implications.[20]

2. Affirmation:    The Debtor was given fair opportunity—after being fully informed of all material rights and facts—to either affirm by accepting the benefits of the Contract or disaffirm it by leaving the facility.    Despite refusing to sign the paper the Debtor voluntarily chose to reside at the facility for approximately thirty (30) months, during which time he interacted daily with staff and received skilled nursing and rehabilitation services as well as living in a room and presumptively eating food daily provided by the Creditor. These acts constitute clear conduct demonstrating affirmation of the agreement to the terms of the Contract.[21]

3. Acceptance of Benefits:    The Debtor unambiguously accepted substantial benefits—including housing, medical treatment, and care—under the exact terms set forth in the Contract. As Maryland law requires ratification to involve knowing acceptance of benefits.[22]    There is no question that the Creditor fulfilled it's requirements under the Contract.

Moreover, Maryland law prevents facilities from rejecting incoming residents in transit, particularly when arriving by ambulance, as here. Once admitted, the

---

[20] *Ehrlich*, supra at 608 - 609.
[21] *Munich Re-Insurance*, supra at 218.
[22] *Cumberland Coal*, supra at 134.

Debtor was consistently requested to execute the Contract, simply refusing to sign, while continuing to benefit from the services rendered.

The totality of evidence shows that the Debtor, with full knowledge and volition, ratified the unsigned Contract by accepting services and residing at the facility for over two years. Accordingly, the unsigned Contract is enforceable under Maryland law because he ratified it and all the terms, including the legal fee provision are enforceable.

### 3.1 Detrimental Reliance aka Promissory Estoppel

Detrimental Reliance also known as promissory estoppel, is a doctrine that enforces a promise even in the absence of a formal contract, where one party reasonably relies on that promise to their detriment.   Maryland adopts the definition from the Restatement (Second) of Contracts § 90(1):

> "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."[23]

The elements of promissory estoppel are:

1. A clear and definite promise;
2. A reasonable expectation by the promisor that the promise will induce action or forbearance;
3. Actual reliance by the promisee;
4. Reasonableness of the reliance; and
5. Detriment suffered by the promisee as a result of the reliance.

---

[23] See Pavel Enters. v. A. S. Johnson Co., 342 Md. 143, at 159 - 160 - fn 18, 674 A.2d 521 (1996).

1. Clear and Definite Promise:  The Debtor was presented with a written Contract pre-approved by the State of Maryland (COMAR 10.07.09.06) outlining the terms under which the Creditor would provide skilled nursing care. The Debtor was repeatedly given copies of this Contract and, on one occasion, requested time to allow his attorney to review it. This course of conduct establishes the presence of a clear and definite promise by the Creditor to provide services on specific terms required to be performed by the Creditor facility by Maryland law.  These terms included the Debtor's Bill of Rights, inability to charge interest, and attorney fees.

2. Reasonable Expectation of Inducing Action: The Creditor accepted the Debtor as a resident based on the industry practice of executing admission contracts after a patient is settled. The Creditor could not, under Maryland law, reject a resident once he was in transit. It was entirely reasonable for the Creditor to expect that presenting its standard contract and performing under it would induce the Debtor either to execute the Contract, accept its terms by conduct, or leave immediately upon the first presentation of the Contract.

3. and 4. Actual and Reasonable Reliance: The Creditor provided long-term skilled nursing services from August 31, 2022 through February 22, 2025, incurring significant costs based on the reasonable belief that the Debtor would pay according

to the terms of the admission contract and act[24] according to the terms of the Contract. Despite the Debtor's refusal to sign, he remained in the facility, made use of its services, and did not reject the terms of the contract in any formal way.

4. Resulting Detriment: The Creditor has not been paid for the services provided. Nor have any significant legal fees been paid.  Its reliance was to its detriment, and that detriment can only be remedied by enforcing the terms of the unsigned admission Contract. The Debtor's failure to cooperate with Medicaid eligibility processes caused detriment to the Creditor regarding non-payment of services and legal fees. The Debtor's failure to cooperate with this Court also exacerbated the detriment by significantly increasing the Creditor's legal fees.  A good example of this is Motion for Sanctions Per Fed. R. Bankr. P. 9011(c) [Dkt. No. 369] that the Creditors counsel was forced to file to protect the Administrator.  This resulted in the Order Granting Motion for Sanctions [Dkt. No. 388] in which the *Court finds that Debtor has violated Fed. R. Bankr. P. 9011(b)*.[25]

---

[24] The Debtor's actions such as observing rules regarding the health safety and welfare of the Creditor staff.  The Debtor benefits from the bill of rights, also incorporated into the Contract as requires by the State of Maryland.
[25] Specifically, the Court found:

> Upon consideration of the allegations set forth in the Motion for Sanctions as well as a review of the entire record in this case, the Court finds and concludes that Debtor violated Fed. R. Bankr. P. 9011(b) in, among other things, filing the Motion of Contempt of Court by Ron Colbert by Refusing to Documents, Information or to Permit Inspection of the Premises in this Bankruptcy Case [Dkt. No. 302] and the Motion to Order Dismiss of Opposition to Motion of Contempt of Court by Ron Colbert [Dkt. No. 364]. Accordingly, the Court finds and concludes that it should grant the Motion for Sanctions with respect to the issue of whether Debtor violated

All elements of detrimental reliance are satisfied.  The Creditor presented the Debtor with a clear, written Contract approved, which the Debtor reviewed and acknowledged, satisfying the first element. It was reasonable for the Creditor to expect that providing services under this Contract would induce the Debtor to accept its terms, meeting the second element. The Creditor reasonably relied on that expectation by furnishing almost thirty (30) months of care, despite the Debtor's refusal to sign, which satisfies the third and fourth elements. Finally, the Creditor suffered financial harm from significant unpaid services and increased legal fees due to the Debtor's failure to cooperate with Medicaid and this Court, satisfying the fifth element.  Under Maryland law, enforcement of the Contract is necessary to avoid injustice.

The terms of this contract are a question of fact for the Court to determine. The following factors should persuade the Court to find that the terms of the Contract are those set forth in the Contract:

---

Fed. R. Bankr. P. 9011(b) and hold under advisement the issue of the appropriate sanctions to be imposed under Fed. R. Bankr. P. 9011(c). Wherefore, it is, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED,** that the Motion for Sanctions is **GRANTED**, such that the Court finds that Debtor has violated Fed. R. Bankr. P. 9011(b); and it is further,

**ORDERED**, that the Court will take under advisement the issue of the appropriate sanctions to be imposed on Debtor pursuant to Fed. R. Bankr. P. 9011(c) and may, if necessary, set a hearing thereon by future notice or order.

1. The Contract terms were clear and definite, as the same resident agreement contract was presented time and time again to the Debtor.

2. All of the Contract terms were pre-approved by the State of Maryland and were required to be in this resident admission Contract.

3. The State of Maryland required the Creditor to have the Contract agreed to by the resident upon admission; although no law directly states this, the Court may infer that the resident also has an obligation to agree to the Contract or not be admitted to the facility or, if admitted, leave.

4. The Contract was presented to the Debtor many times and the Debtor was aware of all of the terms of the Contract;

5. The Debtor never challenged any term in the Contract;

6. The Debtor took advantage of many terms in the Contract.

7. The Debtor never objected to any terms of the Contract despite having almost three (3) years to do so.

8. The Debtor bears the burden of disproving the existence or applicability of the contract terms. Accordingly, the Court should adopt an all-or-nothing approach: either no contract existed, or—if a contract did exist—then all terms set forth in the unsigned Contract govern. The unsigned Contract is the only admissible evidence before the Court establishing the terms of the

parties' agreement, and the Debtor has failed to present any contrary evidence to rebut any such terms.

Accordingly, under the doctrine of Detrimental Reliance aka Promissory Estoppel the terms of the contract formed between the Creditor and Debtor are all the terms of the Contract.

## IV.    Summary

The unsigned Contract was accepted and is enforceable under Maryland law. The Creditor presented detailed testimony and documentation confirming that the Debtor resided at its facility for nearly thirty (30) months, received extensive services, and was repeatedly provided with copies of the state-approved Contract, which he declined to sign but did not reject. Contract enforceability is independently supported under three (3) doctrines: contract formation by conduct, ratification, and detrimental reliance (promissory estoppel).

The Debtor, through his informed and voluntary conduct—accepting services while being aware of the Contract terms—ratified the agreement and induced the Creditor's continued performance. The Creditor relied on the Debtor's conduct to its detriment, incurring substantial costs and legal fees. All legal elements required under each doctrine is satisfied.  The Court should find that the unsigned Contract was accepted and is legally binding and enforceable.

Dated:  June 27, 2025                              _____/S/ William Rudow_____
                                                                      William M. Rudow, Esquire

Rudow Law Group, LLC
502 Washington Avenue, Ste 730
Baltimore MD 21204
Fed. Bar No.: 09937
(410) 542-6000
WilliamRudow@RudowLaw.com.com
*Attorney for Creditor, Manor Care of Wheaton MD, LLC*